## CIRCUIT COURT OF THE CITY OF RICHMOND

Charles L. Mayfield

    v.

Southern Railway Co.

June 24, 1993

Case No. LS-3923–4

BY JUDGE RANDALL G. JOHNSON

This Federal Employer's Liability Act (FELA) case is before the court on defendant's motion for sanctions under Va. Code § 8.01–271.1 and Rule 4:12 of the Rules of the Supreme Court of Virginia. On December 6, 1987, plaintiff reported to his supervisor that he had strained his right shoulder while replacing a "knuckle" on a freight car in Maud, Illinois. On November 8, 1990, plaintiff filed his motion for judgment alleging that his shoulder injury was caused by defendant's negligence. He sought damages of $1,500,000. On May 22, 1991, defendant served the following interrogatory on the plaintiff:

> 7. State whether you are suffering or have ever suffered from any physical, emotional or mental condition or any other infirmity of any kind, other than the injuries and/or conditions alleged to have been caused by the accident sued upon in this action, and, if so, *FOR EACH SUCH CONDITION OR IN-JURY*, state and describe in detail the following: the nature and extent of such condition or injury; the date of injury or the date of onset of condition and the duration of such condition

or injury; all past and/or present symptoms or manifestations of each condition or injury; the name and address of each treating physician or health care provider who has ever treated you for such condition or injury; the inclusive dates of such treatment; the exact nature of such treatment; and whether plaintiff was and/or is disabled from any employment or activities due to each such condition.

Emphasis in original.

Plaintiff's response, made under oath and served on defendant on September 24, 1991, was as follows:

RESPONSE: In the late 1960's, plaintiff was involved in an automobile accident in Sullivan, when he ran into the back of another truck. He was treated and released at Sullivan Hospital, from which he fully recovered. In 1984, plaintiff chipped a bone in his foot when he slipped on diesel fuel while working for the railroad. Dr. Foley performed heel surgery at Gibson General Hospital.

Defendant served requests for supplementation of responses to interrogatories on July 1, 1992, and on December 1, 1992. No supplementation was provided.

On October 24, 1991, plaintiff was deposed by defendant's counsel. The following questions and answers occurred:

[By defendant's counsel]

Q. Let me ask you specifically, Mr. Mayfield. I understand that the injury that you have brought this suit about, the only injury that you sustained was to your right shoulder; is that correct?

A. Yes, ma'am.

Q. Did you have any injury to your right shoulder in your youth?

A. No, I don't believe so.

Q. When was the first time that you ever experienced any significant pain in your right shoulder?

A. I would guess December of 1987.

Q. So before December of 1987, you had never had any problem with your right shoulder and had never sought any medical attention for it?

A. No. No.

\* \* \* \*

Q. I understand the injuries you told me about that you had in high school. Which is one I understand from your football playing where you injured your leg. And you've told me that you had not injured your shoulder prior to December of 1987.

A. Right.

Q. I'm trying to find out if there are any other illnesses that you have had at any time in your life that have required medical treatment other than colds and viruses and that type of thing.

A. I had foot surgery.

Q. When was that?

A. I don't know.

Q. Any other medical or physical conditions that have required treatment?

A. Not that I know.

Plaintiff's Deposition at 7–8 and 24–25.

At no time in his answers to interrogatories or during his deposition did plaintiff ever mention any problems he had experienced with his right shoulder or, for that matter, any medical problems at all other than those set out above. Medical records obtained by defendant through other forms of discovery, however, tell a different story. Specifically, a May 14, 1990, letter from Dr. Melvin Post, a Chicago orthopedist who saw plaintiff one time on a consultation, to another doctor stated:

> The patient stated that he first developed pain in his right shoulder in 1984 and received one steroid injection. He was well for many years and was able to work until December 6, 1987, when he injured his right shoulder at work . . . .

Another doctor, Dr. Glen O. Dickenson, an Owensville, Indiana, osteopath identified by plaintiff in his deposition as his family doctor

until 1986, noted the following in a medical "summary" provided to defendant's counsel:

> 08-31-82. Bother[some] shoulder and elbow, can't lift very well, causes pain, about three months ago, came on gradually, worse last three months, arms and hands go to sleep, worse at night, lost weight, appetite down, bowel movements the same, urination (the same). OMT. *Aristocort 1cc* IM, RX — Meclomin.
>
> 10-21-83. BP 122/80 right knee pain some swelling of cartilage, right shoulder (scapula) *Decadron 1 cc* IM, Dalalone D.P. 1cc IM RX — Butazolidin DX — bursitis right knee.
>
> 10-01-84. Right shoulder *Aristocort 1cc* IM, Dalalone 1cc IM.
>
> 10-05-84. Feeling better, right shoulder, OMT. RX — Tolectin DS.
>
> 07-17-87. Right shoulder ache.
>
> 07-20-87. Right shoulder acromian process tendonitis, *2cc Carbocaine* 1 instilled, infiltrated with *Aristocort* 80 mg.

Significantly, the "IM" set out in the entries of August 31, 1982, October 21, 1993, October 1, 1984, and apparently also applicable to July 20, 1987, refer to intramuscular injections. As already noted, none of these problems or treatments were ever mentioned by plaintiff in response to defendant's discovery requests.

Defendant's motion further alleges that plaintiff deliberately and improperly attempted to prevent defendant's counsel from obtaining his medical records from Dr. Dickenson. Specifically, defendant states that Dr. Dickenson failed to respond to a November 21, 1991, letter and accompanying medical release authorization sent by defendant's counsel, and that he also failed to respond to a second release authorization, which was sent to him on June 30, 1992. Defendant's counsel sent a third release form to Dr. Dickenson on November 24, 1992, to which there was again no response. Defendant's counsel then decided to take Dr. Dickenson's deposition. Because Dr. Dickenson was to be out of the country and unavailable for deposition prior to January 19, 1993, which was only one week before trial, his deposition was set for January 19. Plaintiff moved to quash the deposition, but the motion was overruled. On January 5, 1993, defense counsel's paralegal called Dr. Dickenson's office to inquire about plaintiff's records. According

to the paralegal, who testified at the hearing on defendant's motion, she was told that plaintiff had instructed Dr. Dickenson not to release the records in spite of plaintiff's written authorization. One of defendant's counsel testified that he was also told by Dr. Dickenson that plaintiff had instructed him not to release the records. Defendant's counsel then called plaintiff's counsel, and it is as a result of that conversation that the previously-mentioned summary was obtained. Shortly after receiving the summary, and prior to Dr. Dickenson's deposition, the case was settled for $200,000. No final order has been entered, however, pending disposition of defendant's current motion.

The principal basis of defendant's motion seems to be what defendant alleges were plaintiff's deliberate attempts to prevent defendant's counsel from obtaining plaintiff's medical records from Dr. Dickenson, and plaintiff's attempt to prevent defendant's counsel from deposing Dr. Dickenson. In fact, the sanction specifically sought by defendant is an award of "legal fees and other costs expended in pursuing proof of plaintiff's prior shoulder problems . . . ." Such fees and costs amount to nearly $7,000, and include such things as reviewing records of other doctors, sending release forms to Dr. Dickenson, drafting supplemental discovery requests, scheduling Dr. Dickenson's deposition, and so on. The court rejects this basis for imposing sanctions.

With few exceptions, all of the items listed on defendant's Expense Exhibit, which was introduced into evidence at the hearing on defendant's motion, are for tasks which should have been performed by defendant's counsel no matter when they learned of plaintiff's prior shoulder condition. Reviewing other doctors' records, preparing supplemental discovery requests, scheduling Dr. Dickenson's deposition, and most of the other items on that exhibit cannot be said to have been caused by plaintiff's actions. While some of plaintiff's conduct may well have delayed defendant's counsel's knowledge of certain facts, that knowledge, whenever obtained, would have led to most of the same tasks listed in the exhibit.

An even stronger reason for denying defendant's request for sanctions based solely on the delay caused by plaintiff's conduct is that the defendant entered into a voluntary settlement of plaintiff's claim *after* plaintiff's prior medical history had come to light, and *after* this court had ordered Dr. Dickenson's deposition to be taken. The court assumes that whatever weaknesses had been uncovered as a result of plaintiff's prior history, as well as whatever potential weaknesses might be un-

covered during Dr. Dickenson's deposition, were taken into consideration by defendant when it made its settlement offer. To award sanctions to defendant based solely on the delay incurred in discovering those facts, when such facts *were* discovered prior to settlement, would allow defendant to have its cake and eat it, too. Having voluntarily settled the case with knowledge of plaintiff's history, defendant will not now be awarded expenses received in obtaining that history solely because of the delay caused, or alleged to have been caused, by plaintiff's conduct.

While the court will not award sanctions based solely on the delay allegedly caused by plaintiff's conduct, sanctions will nevertheless be imposed. Va. Code § 8.01–271.1 provides, in pertinent part:

§ 8.01–271.1. *Signing of pleadings, motions, and other papers; oral motions; sanctions.* — Every pleading, written motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, and the attorney's address shall be stated on the first pleading filed by that attorney in the action. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address.

The signature of an attorney or party constitutes a certificate by him that (i) he has read the pleading, motion, or other paper, (ii) to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation . . . .

If a pleading, motion, or other paper is signed or made in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper or making of the motion, including a reasonable attorney's fee.

Rule 4:12 of the Rules of the Supreme Court of Virginia provides, again in pertinent part:

> (d) *Failure of Party to Attend at Own Deposition or Serve Answers to Interrogatories or Respond to Request for Inspection.* — If a party or an officer, director, or managing agent of a party or a person designated under Rule 4:5(b) (6) or 4:6(a) to testify on behalf of a party fails (1) to appear before the officer who is to take his deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories submitted under Rule 4:8, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under Rule 4:9, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just . . . . In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

And Rule 4:12(a)(3) provides:

> For purposes of this subdivision an evasive or incomplete answer is to be treated as a failure to answer.

It is the opinion of the court that plaintiff's conduct mandates sanctions under both of these provisions.

Pretrial discovery is an integral part of the judicial process. The Rules of the Supreme Court of Virginia, as well as the guidelines promulgated by this court, point to the importance placed upon discovery by the judiciary. When parties engage in discovery, answers to that discovery must be responsive, honest, and complete. If they are not, and if the deficiency is the result of a *deliberate* attempt to avoid the discovery rules, sanctions under Rule 4:12 are appropriate. If a discovery response is in writing, and if it is not responsive, honest, and complete as a result of a *deliberate* attempt to avoid the discovery rules, sanctions under Va. Code § 8.01–271.1 are appropriate as well. Sanctions are appropriate here. Plaintiff testified at the hearing on defendant's motion. It was his testimony that he did not mention his previous shoulder problems for two reasons. First, he stated that re-

gardless of what his doctors called it, he did not consider the area of his body experiencing problems to be his shoulder. He thought it was his neck and/or back. Second, he said that even those problems, wherever they were, simply slipped his mind. I reject both explanations.

With regard to the first explanation, plaintiff was asked at the hearing to point to the place on his body where he had had problems. While this court is not trained in medicine, the place plaintiff pointed to looked for all the world like his right shoulder. Moreover, the interrogatory set out earlier in this opinion specifically asked for *"any* physical, emotional or mental condition or *any* other infirmity of *any kind*, other than the injuries and/or conditions alleged to have been caused by the accident sued upon in this action . . . ." (Emphasis added.) Indeed, plaintiff's answer refers to an automobile accident in the 1960's, and a 1984 foot operation, neither of which are even remotely related to his right shoulder. Similarly, the question during depositions was whether plaintiff had had *"any* other illnesses . . . at *any* time in your life that have required medical treatment other than colds and viruses and that type of thing." Plaintiff's only response was that he had had foot surgery.

Plaintiff's second explanation is equally unsound. It is simply beyond belief that no fewer than four intramuscular injections, the last one less than five months prior to the injury sued on, could possibly have "slipped" plaintiff's mind, but that he would remember a 1960's automobile accident, and a 1984 foot surgery. The court also notes that it had ample opportunity to observe plaintiff during his testimony, and that the court noted well plaintiff's hesitations, glances at his attorney, and general nervousness during questioning. In short, the court firmly believes that plaintiff was lying, and that the reasons he gave for not truthfully answering defendant's discovery requests are not the real reasons. The real reason plaintiff did not answer those requests truthfully is because he thought it would hurt his case.

As already noted, discovery is one of the integral processes of our judicial system. Litigants must not be allowed to toy with that process, or to provide anything other than honest and good-faith responses to discovery. Anything less destroys the very purposes of discovery and is unacceptable. Where, as here, a litigant deliberately withholds relevant information in the face of a clear, direct, and unambiguous request for such information, sanctions not only should, but must, be awarded. They will be awarded here.

Before stating the amount of the award, the court notes that sanctions are being awarded only for what I find to be dishonest answers to the interrogatory and deposition question set out earlier in this opinion. Sanctions are *not* awarded for plaintiff's alleged instruction to Dr. Dickenson not to give his medical records to defendant's counsel, or for plaintiff's attempt to prevent defendant's counsel from taking Dr. Dickenson's deposition. First, it is doubtful that either situation is covered by Va. Code § 8.01–271.1 or the discovery rules of the Supreme Court. And second, the allegation regarding plaintiff's instructions to Dr. Dickenson was supported only by hearsay testimony of what Dr. Dickenson or his office staff said. While that testimony was not objected to, it was countered by an affidavit from Dr. Dickenson denying that plaintiff ever told him not to give his records to defendant's counsel, and that he, Dr. Dickenson, withheld those records only because he had not received the costs to reproduce them. If defendant's hearsay is considered, Dr. Dickenson's affidavit is, in the court's view, sufficient to overcome it. If Dr. Dickenson's affidavit is inadmissible as hearsay, and I think it is, then so is defendant's hearsay. No part of the sanction to be awarded is based on those allegations.

In determining an appropriate sanction, the court is attempting to do two things: (1) punish this plaintiff for his dishonesty; and (2) send a clear message to other litigants that such dishonesty will not be tolerated by this court. In light of the answers given, and in light of the settlement amount, a sanction of $10,000 will be imposed. Because there is no allegation that plaintiff's lawyer engaged in any improper conduct, the sanction is imposed only on plaintiff.