LIBERTY MUTUAL INSURANCE COMPANY V. THELMA MARIE VENABLE.

December 1, 1952.

Record No. 4004.

Present, All the Justices.

358

The opinion states the case.

*Venable, Parsons, Kyle & Parsons,* for the plaintiff in error.

*Thomas. A. Williams* and *Charles H. Gordon,* for the defendant in error.

Smith, J., delivered the opinion of the court.

On February 18, 1950, Jeddie Rice, an employee in the service department of the Goodyear Tire & Rubber Co., Inc., in Hampton, Virginia, was directed by his employer to deliver some merchandise to a customer. He left in his employer's pick-up truck to make the delivery and on the way he was asked by a friend, John Venable, to give his wife a ride home. Rice agreed and Mrs. Venable boarded the truck. After going about one mile, Rice had an accident in which Mrs. Venable was injured.

She sued him for personal injuries, alleging gross negligence, and recovered a judgment for $2,000.

Mrs. Venable then brought this action by motion for judgment against the Liberty Mutual Insurance Company alleging that she had recovered a judgment on December 13, 1950, against Jeddie Rice for the sum of $2,000, with interest, for injuries sustained by her as a result of the gross negligence of Rice in operating the truck with the knowledge and permission, express or implied, of the Goodyear company, and that the judgment was unsatisfied. The motion further alleges that there was in existence at the date of the accident an automobile liability insurance policy issued by the Liberty Mutual Insurance Company covering the truck and any and all persons using or responsible for the use of the truck and that under the terms of the insurance policy and by virtue of the statute (Code 1950, § 38-238) the insurer undertook to pay anyone injured in such negligent operation of the truck.

The insurance company filed its answer and grounds of defense admitting that it issued an insurance policy to Goodyear covering liability on the truck and that under the law of the Commonwealth of Virginia the policy covered the driver of the truck while it was being operated with the knowledge and permission, express or implied, of the owner. But the insurance company expressly denied that the truck was being operated with the knowledge and permission, express or implied, of Goodyear and alleged that it was, in fact, being operated wrongfully and in violation of express and specific instructions of the owner not to pick up riders or passengers. Once again Mrs. Venable recovered a verdict and judgment for $2,000. To this judgment the Liberty Mutual Insurance Company was awarded a writ of error and assigns four errors to the action of the trial court as follows:

(1) In granting and refusing certain instructions.

(2) In refusing to admit a statement signed by Jeddie Rice, a witness.

(3) In refusing to set aside the verdict and grant a new trial on the grounds of after discovered evidence.

(4) In refusing to set aside the verdict as contrary to the evidence and without evidence to support it.

The allegations of the motion for judgment and the grounds of defense present a single issue: After Rice picked up Mrs.

Venable, was he operating the truck with the permission of its owner as contemplated by the statute? This question requires a consideration of Code 1950, § 38-238, which reads, in part, as follows:

"No such policy shall be issued or delivered in this State, to the owner of a motor vehicle, by any corporation or other insurer authorized to do business in this State, unless there shall be contained within such policy a provision insuring such owner against liability for damages for death or injuries to person or property resulting from negligence in the operation of such motor vehicle, *in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner."* (Italics supplied.) (Title 38 was repealed by Acts of 1952, c. 317, p. 422, and a new Title 38 was enacted, which has been codified as Title 38.1, 1952 Cum. Supp., Code 1950.)

The italicized portion of the statute and especially the phrase "with the permission, express or implied, of such owner" has been the subject of many decisions in this and other jurisdictions. Our latest decision discussing the omnibus coverage clause is *Hartford Acci., etc., Co.* v. *Peach,* 193 Va. 260, 68 S. E. (2d) 520.

██ ██ Every automobile liability policy sold in Virginia is required by the statute to contain an omnibus coverage clause extending the same coverage to one operating a motor vehicle with the owner's permission as that given the named insured. *Lumbermens Mut. Cas. Co.* v. *Indemnity Ins. Co.,* 186 Va. 204, 42 S. E. (2d) 298. See also 10 M. J., Insurance, § 150. This statute is for the benefit of a party who has suffered damages by the negligent use of an insured's motor vehicle when operated by another with the permission of the owner. Liability is not limited to acts of negligence in the operation of the motor vehicle in the business of the owner, but such operation may be in the business of the owner or otherwise. *Liberty Mut. Ins. Co.* v. *Tiller,* 189 Va. 544, 53 S. E. (2d) 814.

Mr. Justice Eggleston in *Hartford Acci., etc., Co.* v. *Peach, supra,* 193 Va. at page 266, while discussing the question of implied permission contained in an omnibus coverage clause said:

"It is true that implied permission may arise from a course of conduct between the parties. Examples of this are found in *Hinton* v. *Indemnity Ins. Co.,* 175 Va. 205, 8 S. E. (2d) 279, and

*State Farm Mut. Automobile Ins. Co.* v. *Cook, supra* [186 Va. 658, 43 S. E. (2d) 863, 5 A. L. R. (2d) 594]. In each of these cases there was a mutual acquiescence in, or a lack of objection to, a continued use of the car, signifying assent. Under such circumstances we applied the holding in *Brower* v. *Employers' Liability Assur. Co., supra* [318 Pa. 440, 177 A. 826], that 'The word "permission" [implied] has a negative rather than an affirmative implication; that is, a permitted act may be one not specifically prohibited as contrasted to an act affirmatively and specifically authorized.' (177 A., at page 829.)"

"In *Sordelett* v. *Mercer*, 185 Va. 823, 40 S. E. (2d) 289, we said (185 Va. 835) in reference to the meaning of the concluding sentence of section 4326a [Code 1950, § 38-238] involved here that 'the express or implied permission referred to in the statute means the express or implied permission to use or operate the motor vehicle either in the business of the owner or for any other purpose for which express permission was given or as to which it may be implied that permission was given. Permission to do a specific thing is not permission to do all things.' " *Fidelity, etc., Co.* v. *Harlow*, 191 Va. 64, 72, 59 S. E. (2d) 872.

*Fidelity, etc., Co.* v. *Harlow, supra,* presents the question of the effect of the failure of the employee-driver of the owner's vehicle to follow instructions and directions not to use the vehicle for his personal use. Harlow recovered a judgment for personal injury against Swoop, the operator of a trailer tractor, owned by Tidewater Express Lines, Inc. Harlow then proceeded against Fidelity, the carrier of the liability insurance on the tractor, on the ground that Swoop was operating the tractor at the time of the accident with the implied permission of the owner. The trial court found that Swoop was operating the tractor with implied permission because it was left in his possession every night and he carried the keys to it. Furthermore, when the manager learned that Swoop had been using the tractor for his personal use, instead of dismissing him he obtained authority to retain him in the company's employ. This court reversed the case because Swoop testified, without contradiction, that he had instructions never to use the tractor for his personal use, that he had never been given permission by any officer of the company to use the tractor for his personal use and that the local manager had specifically instructed him not to use the tractor for his personal use.

In order for Mrs. Venable to recover from the insurance carrier on the policy issued by it to Goodyear covering liability on the truck, she had the burden of proving that Rice was, at the time of the accident, driving the truck with the permission, express or implied, of the insured. *Hartford Acci., etc., Co.* v. *Peach, supra.* Mrs. Venable relied on the testimony of Rice to show that he had implied permission to pick up riders because he had done so before and had not been told that he should not do so.

It is contended that since the jury found that Rice was not "hampered or curtailed by any instructions or direction not to pick up passengers" the verdict was founded on conflicting evidence and must stand.

Rice testified that at the time of the accident and since the fall of 1949 Richard Taylor Kitelyn and Leroy F. Moore had been his bosses and that prior to his employment with Goodyear he had worked for the York Tire Company under Moore until York was bought out by Goodyear in 1949.

When asked if he had express permission from Goodyear to operate the truck at the time of the accident, he answered, "Yes, sir." He was asked if he had ever picked up passengers or riders before and he replied, "Yes, sir." When questioned whether Moore knew that he had picked up riders, he replied, "I guess he do." Rice stated that Moore had never told him not to do it and that no one had given him instructions not to carry passengers. On cross-examination in answer to a question whether he had ever used the truck before except for the company's business, he answered, "No, sir." On cross-examination he was also asked whether the company had ever given him definite instructions not to use the truck for his personal business and he replied, "To be truthful I can't answer that question." Kitelyn testified that at a meeting of the employees he had given instructions to Rice and others not to pick up passengers and Rice was recalled and asked if Kitelyn had ever given him any orders or instructions concerning the use of the truck. He answered that no such meeting had been held and that no such instructions were given.

When confronted by a statement credited to him by the witness, Greene, to the effect that he had told Greene that Kitelyn had told him not to pick up riders, his reply was, "I don't

remember that either.'' Later in his testimony Rice said that Kitelyn had given him such instructions after the accident which was the first time he had received directions concerning the use of the truck.

Kitelyn, the manager, Moore, the store manager, and Branch, an employee, testified for the insurance company that shortly after Goodyear bought out York, Kitelyn called the employees in to a meeting and instructed them that the truck was not to be used by them for their personal business and that they were not to pick up riders. Kitelyn testified that he told the employees that if they violated this instruction they would be dismissed and Rice was dismissed. The manager further testified that he had never given Rice permission to use the truck for his personal use, nor did he know of any such use of the truck by him or any of the employees.

Since Rice was the only witness relied on by the plaintiff to prove the vital issue in the case, namely, that Rice was operating the truck with a passenger at the time of the accident with the implied permission of the insured, counsel for the insurance company sought to impeach his testimony through the introduction of a written statement made by Rice after the accident and prior to the trial.

This statement, written on four pages, each of which was signed by Rice, was excluded by the trial court on the ground that it was an ex parte statement in writing within the coverage of Code, § 8-293. The part of the statement relative to the question of permission to use or operate the truck and dealing with the question of instructions and directions not to pick up riders is as follows:

''I had been instructed by the Store Manager, R. T. Kitelyn, that I wasn't supposed to carry riders or passengers in the company truck, but I did so and picked up Mrs. Venable. I am not in the habit of picking up riders in the company truck and I haven't done so before. I must have forgotten about this rule when Mr. Venable asked me to give his wife a ride. Mr. Venable is a friend of mine, and I thought that I was helping him out, but nevertheless I admit that I had been instructed by Mr. Kitelyn not to pick up riders.''

*Fidelity, etc., Co.* v. *Harlow, supra,* shows the materiality of so much of the written statement of Rice which dealt with the question of instructions and directions to him regarding the use

of the truck and the hauling of riders. In that case the instructions and directions to the employee were similar to those claimed to have been given to Rice by appellant's manager and store manager.

Having determined that the contents of the written statement, which contradicted Rice's testimony, were material, we now come to the question of the admissibility of the statement.

Code 1950, § 8-293 provides that a witness may be cross-examined as to previous statements made by him in writing, relative to the subject matter of the proceeding, without such writing being shown to him. However, if it is intended to contradict such witness by the writing, it is necessary to follow the procedure provided in this section. This provision was enacted by the Acts of 1899/1900, c. 117, p. 125, which act amended and re-enacted § 3351 of the Code of 1887. It was carried forward in the Code of 1919 as § 6216, but with the addition of a new sentence which was added by the Revisors at that time. The new provision inserted by the Revisors reads as follows:

"But this section is subject to this qualification, that in an action to recover for a *personal injury* or *death by wrongful act or neglect,* no ex parte affidavit or statement in writing other than a deposition, after due notice, of a witness as to the *facts or circumstances attending the wrongful act or neglect* complained of, shall be used to contradict him as witness in the case." (Italics supplied.) This identical language now appears as the last sentence of Code 1950, § 8-293.

The trial court held that the language quoted above was applicable to this case and refused to permit the written statement to be offered in evidence for the purpose of contradicting the testimony of Rice.

"The purpose of the addition to the statute was to correct an unfair practice which had developed, by which claim adjusters would hasten to the scene of an accident and obtain written statements from all eye-witnesses. Frequently, these statements were neither full nor correct and were signd by persons who had not fully recovered from shock and hence were not in full possession of their faculties. Later, such persons, when testifying as witnesses, would be confronted with their signed statements and, after admitting their signatures, these statements would be introduced in evidence as impeachment of

their testimony given on the witness stand." *Harris* v. *Harrington*, 180 Va. 210, 220, 22 S. E. (2d) 13.

The qualification in Code, § 8-293 is specifically made applicable only to actions to recover for personal injury or death by wrongful act. While the "unfair practice" referred to in the *Harris Case* might well be prevalent in other types of actions, the statutory qualification, as written, applies only to tort actions for personal injury or death by wrongful act.

In *Robertson* v. *Commonwealth*, 181 Va. 520, 25 S. E. (2d) 352, 146 A. L. R. 966, the trial court had held that since the last sentence of Code, § 6216 excluded written statements only in actions for personal injuries or death by wrongful act or neglect, and in no other cases, it was "class legislation and a special law" prohibited by subsection 3 of section 63 of the Virginia Constitution. On appeal this contention was answered as follows:

"Actions for personal injuries and death by wrongful act cover a large class of cases which are brought in the common-law courts. The necessity for and the reasonableness of such classification are primarily questions for the legislature and not for the courts. * * * We cannot say that such classification is arbitrary or unreasonable. Indeed, if the act is to be condemned because it is applicable in actions for personal injuries and death by wrongful act, and is not applicable in actions for damages to property, by the same token we must condemn the statutes of limitations which * * * provide different limitations in actions for personal injuries and death by wrongful act from those in actions for property damages." 181 Va., at page 535.

■ Since the plaintiff's cause of action in this case was, as shown by her motion for judgment, based on a contract, the policy of insurance, and was not an action to recover for personal injury or death by wrongful act, it follows that the qualification of the last sentence of Code, § 8-293 is not applicable to this case and it was error not to have admitted the written statement of Rice.

■ Furthermore, the portion of the written statement by which it was sought to contradict Rice was not a "statement in writing * * * as to the facts or circumstances attending the wrongful act or neglect complained of," on the contrary, it was

a statement as to facts or circumstances attending a conference prior to the accident in which the plaintiff was injured.

From what is said here, it is apparent that on a retrial of this case instruction D or a similar instruction which properly presents the appellant's theory should be given. Instruction No. 1 is a finding instruction and since it does not properly present the issues, it should not be given.

For the reasons stated the judgment complained of is reversed, the verdict set aside, and the case is remanded for further proceedings in conformity with the views herein expressed.

*Reversed and remanded.*