Present:  Hassell, C.J., Keenan, Koontz, Kinser, Lemons,
and Agee, JJ., and Stephenson, S.J.

ABRAHAM GRAY, JR., ADMINISTRATOR
FOR THE ESTATE OF FREDERICK GRAY,
DECEASED

v.  Record No. 031852  OPINION BY JUSTICE CYNTHIA D. KINSER
                                    June 10, 2004
DOUGLAS RHOADS, INDIVIDUALLY AND AS
CAPTAIN OF THE POLICE DEPARTMENT OF
ALBEMARLE COUNTY, ET AL.

     FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
                Lydia C. Taylor, Judge Designate


     The provisions of Code § 8.01-404 prohibit the use of

certain types of prior written statements to contradict a

witness in a personal injury or wrongful death action.  In

this appeal, we decide whether that statutory prohibition

prevents a plaintiff from introducing prior written

statements into evidence as party admissions during the

plaintiff's case-in-chief.  Concluding that this statute

does not prohibit such use of prior written statements, we

will reverse the judgment of the circuit court.

                MATERIAL FACTS AND PROCEEDINGS

     This appeal arises from the fatal shooting of

Frederick Gray by an officer employed by the Albemarle

County Police Department.  In the early morning hours of

May 15, 1997, several police officers responded to "911"

calls concerning a disturbance at an apartment located at

827 Old Brook Road in Albemarle County where Gray and his female companion resided.  Four officers, Amos Chiarappa, David Wallace, Sharn Perry, and Philip Giles, entered the apartment and observed Gray near or coming out of the bathroom.[1]  They also saw a woman in the apartment.  She appeared to have blood on her clothing.  Wallace described his impression of the scene in the apartment:

> [S]ome type of an assault had occurred.  There [were] blood drops on the various clothing items, property items off to the left in the big living room and along the little short hallway going back towards the bathroom.  And there — I think there was some blood on the — maybe even the walls.  I know there was some on the bathroom floor.  There were drops of blood where they were both standing, so I really couldn't tell where it was coming from, but somebody had been hurt.

One of the officers ordered Gray to "get down" on the floor.  Although Gray seemed to comply with the direction, a struggle ensued when Wallace started to handcuff Gray.  During that struggle, Chiarappa attempted unsuccessfully to restrain Gray by hitting him with an "asp baton" between Gray's shoulder blades and on his forehead.  In Chiarappa's words, after seeing what he believed to be "Sha[r]n Perry's condition . . . at that time, after seeing Phil Giles sliding down the wall . . . , after [Gray] threw David Wallace out that door and after [Gray] turned to attack

---

[1] Officer James Hanover arrived at the scene only seconds before the shooting and did not enter the apartment

2

me," Chiarappa withdrew his weapon and fired three shots. Gray fell facedown in the doorway of the apartment. A subsequent autopsy of Gray's body revealed that the cause of death was "two gunshot wounds to the chest causing injury to both lungs and the heart." He also sustained "blunt force injuries including a bruise to the back[,] a bruise to the right leg[,] a deep bruise to the left top of the head[,] and a laceration of the left forehead."

Subsequently, Abraham Gray, Jr., administrator of the estate of the decedent, filed an amended motion for judgment against Chiarappa, Wallace, Hanover, Giles, and Perry (collectively the "Officers"); Douglas Rhoads, Captain of the Police Department of Albemarle County; and John Miller, Chief of the Police Department of Albemarle County. He asserted claims for assault and battery, false arrest and imprisonment, gross negligence resulting in the wrongful death of Gray, grossly negligent retention, and grossly negligent hiring.

The circuit court entered a pre-trial order requiring the parties to exchange 15 days before trial a list of exhibits to be introduced at trial and a list of witnesses who would be testifying. The order also directed the parties to file any objections to the exhibits and

prior to the incident.

3

witnesses, except those based on relevance, five days before trial; otherwise, the objections would be deemed waived absent a showing of good cause. The defendants did not file any objections to the exhibits at issue in this appeal.

However, during the plaintiff's opening statement at trial, the defendants objected for the first time to the use of certain prior statements made by the Officers.[2] Those prior statements were obtained during two sets of audio-recorded interviews of the Officers after the shooting incident had occurred. The audio-recordings of the interviews were subsequently transcribed. Two detectives employed by the Albemarle County Police Department conducted the first set of interviews in May 1997. A lieutenant employed by the Albemarle County Police Department conducted the second set of interviews in June 1997.

The defendants based their objection on the provision in Code § 8.01-404 prohibiting the use of certain types of prior written statements to contradict a witness in a case for personal injury or wrongful death. The circuit court

---

[2] We reject the defendants' argument that the plaintiff did not adequately identify the Officers' prior statements in his pre-trial exhibit list.

agreed and ruled that the statements could not be used either to impeach the Officers who had made the statements or as substantive evidence of what the Officers had said in the interviews.[3]

A jury returned a verdict in favor of Chiarappa on the claims alleging assault and battery, and gross negligence.[4] We awarded the plaintiff this appeal on the sole issue whether the circuit court erred in barring the plaintiff from using, for any purpose, the statements made by the Officers after the shooting death of Gray when the defendants had failed to make a timely objection to their admissibility in accordance with the circuit court's pre-trial order.

ANALYSIS

A trial court's exercise of discretion to admit or exclude evidence will not be overturned on appeal unless the court abused its discretion. <u>May v. Caruso</u>, 264 Va.

---

[3] The circuit court did allow the plaintiff to ask the two detectives and the lieutenant who conducted the interviews whether they remembered any oral statements made by the Officers.

[4] The circuit court, in ruling on various motions, dismissed the other claims and defendants, except the negligent retention claim against Rhoads and Miller. The court severed that claim from the others and decided that it would proceed to trial only if the plaintiff prevailed against Chiarappa. None of those rulings are pertinent to this appeal.

358, 362, 568 S.E.2d 690, 692 (2002).  However, a "trial court has no discretion to admit clearly inadmissible evidence because 'admissibility of evidence depends not upon the discretion of the court but upon sound legal principles.' "  Norfolk & Western Ry. Co. v. Puryear, 250 Va. 559, 563, 463 S.E.2d 442, 444 (1995) (quoting Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986)).  The converse is likewise true because admissibility of evidence is always governed by legal principles.  See Crowson v. Swan, 164 Va. 82, 92-93, 178 S.E. 898, 903 (1935).  Furthermore, a trial court's interpretation of a statute is a question of law subject to de novo review.  Simon v. Forer, 265 Va. 483, 487, 578 S.E.2d 792, 794 (2003).

The terms of the statute at issue, Code § 8.01-404, are clear and unambiguous as written.  Thus, in construing the statute, this Court looks no further than the plain meaning of the statute's words.  Supinger v. Stakes, 255 Va. 198, 205-06, 495 S.E.2d 813, 817 (1998); City of Winchester v. American Woodmark Corp., 250 Va. 451, 457, 464 S.E.2d 148, 152 (1995).  Under the plain meaning rule, "we must . . . assume that the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret

6

the statute." Barr v. Town & Country Properties, Inc., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990). We cannot depart from the words used by the legislature when its intent is clear. Anderson v. Commonwealth, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944).

In pertinent part, Code § 8.01-404 states:

> A witness may be cross-examined as to previous statements made by him in writing or reduced into writing, relative to the subject matter of the civil action, without such writing being shown to him. . . . This section is subject to the qualification, that in an action to recover for a personal injury or death by wrongful act or neglect, no ex parte affidavit or statement in writing other than a deposition, after due notice, of a witness and no extrajudicial recording of the voice of such witness, or reproduction or transcript thereof, as to the facts or circumstances attending the wrongful act or neglect complained of, shall be used to contradict him as a witness in the case.

(Emphasis added.) The revisors of the Code of 1919 added language which, as amended, has become the emphasized portion of current Code § 8.01-404 prohibiting the use of certain prior written statements to contradict a witness in an action for personal injury or wrongful death. Robertson v. Commonwealth, 181 Va. 520, 534, 25 S.E.2d 352, 358 (1943). In Harris v. Harrington, 180 Va. 210, 220, 22 S.E.2d 13, 17 (1942), we explained the reason for the prohibition:

7

> The purpose of the addition to the statute was to correct an unfair practice which had developed, by which claim adjusters would hasten to the scene of an accident and obtain written statements from all eye-witnesses. Frequently, these statements were neither full nor correct and were signed by persons who had not fully recovered from shock and hence were not in full possession of their faculties. Later, such persons, when testifying as witnesses, would be confronted with their signed statements and, after admitting their signatures, these statements would be introduced in evidence as impeachment of their testimony given on the witness stand.

Accord Alspaugh v. Diggs, 195 Va. 1, 10, 77 S.E.2d 362, 367 (1953); Liberty Mut. Ins. Co. v. Venable, 194 Va. 357, 364, 73 S.E.2d 366, 370-71 (1952).

In applying the provisions of this statute in different factual scenarios, we have held that the prohibition against using certain written statements to contradict a witness applies both to a witness who is a party to the action and a witness who is not. Alspaugh, 195 Va. at 11, 77 S.E.2d at 367. In Scott v. Greater Richmond Transit Co., 241 Va. 300, 303, 402 S.E.2d 214, 217 (1991), we concluded that the prohibition did not apply to a written narrative by a person to whom the witness had given an oral statement because the written narrative was not signed by the witness, nor was it in the handwriting of the witness. And, in Liberty Mut. Ins., 194 Va. at 365, 73 S.E.2d at 371, we held that the prohibition "is

8

specifically made applicable only to actions to recover for personal injury or death by wrongful act." We have never directly confronted the dispositive question presented in this appeal, whether Code § 8.01-404 precludes the introduction of a witness' prior written statement as a party admission in a plaintiff's case-in-chief.[5]

The defendants argue that, if the Officers' statements were introduced into evidence as party admissions, the provisions and intent of Code § 8.01-404 would be emasculated because the plaintiff's purpose in using the statements would, nevertheless, be to contradict the Officers' trial testimony. The plaintiff, however, asserts that the provisions of Code § 8.01-404 address only the use

---

[5] The defendants assert that the plaintiff failed to argue before the circuit court that the provisions of Code § 8.01-404 do not prohibit the use of the Officers' prior written statements as party admissions. We do not agree. During the extensive argument before the circuit court on the defendants' objection, the plaintiff stated to the court that he sought to use the Officers' statements not just to impeach the Officers but also as "substantive" evidence. The circuit court understood the plaintiff's position because it ruled that the statements were not admissible either for impeachment purposes or as substantive evidence. The circuit court specifically stated, "[E]ven if used as substantive evidence in the case-in-chief, which it always is even if used for impeachment if it's a party[,] . . . you can use it on credibility or substantive evidence and, therefore, putting it into evidence to contradict the version that he gives in court is in essence using it to contradict him as a witness even if it isn't used in impeachment." The plaintiff also

9

of prior written statements to impeach a witness. Thus, according to the plaintiff, the circuit court improperly extended the reach of this statute and, by doing so, prevented the plaintiff from admitting the Officers' statements as party admissions in his case-in-chief to prove the events surrounding the shooting death of Gray. We agree with the plaintiff's position.

The opening phrase of Code § 8.01-404 states that "[a] witness may be cross-examined as to previous statements made by him in writing or reduced into writing, relative to the subject matter of the civil action, without such writing being shown to him." (Emphasis added.) We have held that this opening portion of a prior version of the statute "applies only to the cross-examination of a witness . . . and not to an examination in chief of one's own witness." Norfolk & Western Ry. Co. v. Wilkes, 137 Va. 302, 311-12, 119 S.E. 122, 125-26 (1923). The statute then sets out the steps that must be followed "if it is intended to contradict such witness by the writing." Code § 8.01-404 (emphasis added). The use of prior written statements to contradict a witness is, however, made subject to the prohibition at issue here, "in an action to recover for a

_____

raised this argument in his post-trial motion to reconsider.

10

personal injury or death by wrongful act . . . no extrajudicial recording of the voice of such witness, or reproduction or transcript thereof . . . shall be used to <u>contradict</u> him as a witness in the case." Code § 8.01-404 (emphasis added).

The plain terms of Code § 8.01-404 limit the application of the prohibition at issue to those situations where a prior written statement is used to "contradict" a witness. In the specific context of the present case, that was not the result. The plaintiff sought to introduce the transcripts of the Officers' prior audio-recorded statements as party admissions in the plaintiff's case-in-chief. At that point in the trial, the Officers would not have been testifying as witnesses nor would they have previously testified. Thus, the statements would not have been used to "contradict" the Officers because they would not yet have been witnesses and might never have been. If the Officers had already testified and, thereafter, the prior audio-recorded statements had been offered as evidence, they would have been properly refused. Notwithstanding that the statements constituted party admissions, their effect, in that circumstance, would have been to contradict the witnesses and Code § 8.01-404 would not have permitted their introduction. As we said in

11

Harris, the history of the statute, "as well as the language used, clearly indicates that the provisions of the statute are confined to the contradiction of a witness by the introduction of a prior inconsistent statement in writing." 180 Va. at 220, 22 S.E.2d at 17.

There is an important distinction between a party admission and a prior inconsistent statement used to impeach a witness' present testimony. The latter is never admissible to prove the truth of the statement's content. Commercial Distrib., Inc. v. Blankenship, 240 Va. 382, 394, 397 S.E.2d 840, 847 (1990); Hall v. Commonwealth, 233 Va. 369, 375, 355 S.E.2d 591, 595 (1987). Accordingly, when such a statement is offered for impeachment, the opposing party is entitled, upon request, to have the trial court give a cautionary instruction to the jury advising that the statement is to be considered only insofar as it affects the witness' credibility and that it cannot be considered as proof of the statement's content. Id. at 374, 355 S.E.2d at 595. (citing Stoots v. Commonwealth, 192 Va. 857, 866, 66 S.E.2d 866, 871 (1951)).

In contrast, "[e]xtra-judicial admissions made by a party to a civil action are admissible in evidence against" that party. Prince v. Commonwealth, 228 Va. 610, 613, 324 S.E.2d 660, 662 (1985). "An admission deliberately made,

precisely identified and clearly proved affords evidence of a most satisfactory nature and may furnish the strongest and most convincing evidence of truth." Tyree v. Lariew, 208 Va. 382, 385, 158 S.E.2d 140, 143 (1967). A party admission does not have to be inculpatory or incriminating when made. Alatishe v. Commonwealth, 12 Va. App. 376, 378, 404 S.E.2d 81, 82 (1991).

Thus, we hold that the circuit court erred by refusing to allow the plaintiff to introduce into evidence the transcripts of the Officers' prior audio-recorded statements as party admissions in the plaintiff's case-in-chief. We cannot say that the plaintiff was not prejudiced by this error since party admissions "may furnish the strongest and most convincing evidence of truth." Tyree, 208 Va. at 385, 158 S.E.2d at 143.

CONCLUSION

For the reasons stated, we will reverse the judgment of the circuit court and remand this case for a new trial consistent with the views expressed in this opinion.[6]

Reversed and remanded.

---

[6] In light of our decision, it is not necessary to decide whether the circuit court abused its discretion by failing to enforce the terms of its pre-trial order regarding objections to the admissibility of exhibits.

13

SENIOR JUSTICE STEPHENSON, with whom JUSTICE KOONTZ joins, dissenting.

I respectfully dissent. The majority concedes, as it must, that the statements could not be used to contradict witnesses in the trial. Nevertheless, the majority holds that the trial court erred in refusing to allow the plaintiff to introduce the statements into evidence "as party admissions in the plaintiff's case-in-chief."

In Alspaugh v. Diggs, 195 Va. 1, 9, 77 S.E.2d 362, 366 (1953), the defendant contended that a writing signed by the plaintiff was admissible as " 'a statement against interest made by a party in litigation.' "[1] We rejected that contention, holding that "the introduction in evidence of a prior ex parte written statement signed by an interested party is within the purview of the Code [present § 8.01-404] and cannot be used for the purpose of contradicting him." Id. at 11, 77 S.E.2d at 367.

In spite of the holding in Alspaugh, which the majority does not address, the majority holds that the statements in the present case are admissible as party admissions based upon the following rationale:

---

[1] Historically, the terms "admissions against interest" and "party admissions" have been used interchangeably. The latter term, however, seems to be preferred at present. See Charles E. Friend, The Law of Evidence in Virginia § 251, at 465-66 (Michie 1977).

At that point in the trial [when the statements were proffered as exhibits], the Officers would not have been testifying as witnesses nor would they have previously testified. Thus, the statements would not have been used to "contradict" the Officers because they would not yet have been witnesses and might never have been.[2]

To me, it is abundantly clear that plaintiff's sole purpose in introducing the statements was to <u>contradict</u> the Officers when they testified. Indeed, twenty pages of his brief before us were used to endeavor to explain how these statements would have contradicted the Officers' testimony. Additionally, the majority acknowledges that "[i]f the Officers had already testified and, thereafter, the . . . statements had been offered as evidence, they would have been properly refused." Continuing, the majority states that the effect of the statements "would have been to contradict the witnesses and Code § 8.01-404 would not have permitted their introduction."

It appears to me that the majority's ruling will allow a party to circumvent Code § 8.01-404 by doing indirectly what the party could not do directly. I submit that the majority's holding will effectively emasculate the clear

---

[2] We do not find in the record that this argument (<u>i.e.</u>, the timing of the introduction of the statements) was ever made by Gray either at trial or on brief in this appeal.

provisions of Code § 8.01-404.  I would hold that the trial court properly prohibited the use of the statements by the plaintiff in his case-in-chief.