HUMPHREYS, J.,
with whom BENTON, FRANK, CLEMENTS, and FELTON, JJ., join, dissenting.
I disagree with the majority’s conclusion that, under the circumstances of this case, the trial court was permitted to hear additional evidence relating to a finding of fact that had already been made by the commissioner in chancery and *719 accepted by the trial court. Because I would reverse the judgment of the trial court, I respectfully dissent.
A.
Decisions concerning the admissibility of evidence are committed to the sound discretion of the trial court. Blain v. Commonwealth, 7 Va.App. 10, 16, 371 S.E.2d 838, 842 (1988). However, “a trial court has no discretion to admit clearly inadmissible evidence because admissibility of evidence depends not upon the discretion of the court but upon sound legal principles.” Gray v. Rhoads, 268 Va. 81, 86, 597 S.E.2d 93, 96 (2004) (internal quotations omitted). Similarly, ‘“[a]l-though trial courts have discretion to interpret their own orders, that discretion must be exercised reasonably and not arbitrarily or capriciously.’ ” Smoot v. Commonwealth, 37 Va.App. 495, 500, 559 S.E.2d 409, 411-12 (2002) (quoting Rusty’s Welding Serv. v. Gibson, 29 Va.App. 119, 130, 510 S.E.2d 255, 261 (1999)).
Generally, a court order “ ‘must be interpreted within its four comers.’ ” Id. (quoting United States v. Armour & Co., 402 U.S. 673, 682, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971)). According to the decree of reference, entered December 11, 2002, the trial court referred these divorce proceedings to the commissioner “for the purpose of taking evidence of the parties and their witnesses, and reporting to [the trial court] findings, conclusions of law, [and] recommendations in regard to the allegations contained in the pleadings.” The decree further indicates that its execution was to be “governed by the General Order for Commissioners,” which provides, in pertinent part, that the commissioner is to make findings as to “the circumstances and factors which may have contributed to the dissolution of the marriage,” but that evidence as to “the effect of that behavior upon the well-being of the family and/or marital property and its value [is] to be presented at the equitable distribution hearing.” (Emphasis added).
Thus, under the “four corners” of the decree, the commissioner was responsible for receiving evidence and making factual findings as to the factors (including the parties’ behav *720 ior) that contributed to the dissolution of the marriage. The trial court, in contrast, was responsible for receiving evidence and making factual findings as to how those factors affected the marriage and the value of the marital estate.
Here, the commissioner received evidence from both parties on the issue of whether wife engaged in certain “behavior”— specifically, whether she forged husband’s name on multiple credit card receipts. The commissioner then made a factual finding that, based on the evidence before her, husband failed to prove that wife engaged in that behavior. Specifically, the commissioner found that
[T]he evidence on this issue is in equipoise. With the testimony of one party in total contradiction of the other party, as clearly supported by the record here, and no other evidence beyond the documents from which both parties are testifying, [husband] did not meet his burden of proving by a preponderance of the evidence that [wife] forged his signature in the circumstances and for the purposes which he has testified.
During the equitable distribution hearing, the trial court accepted the commissioner’s report, but it then permitted husband to present additional evidence on the issue of whether wife engaged in the alleged “behavior.” However, once the commissioner determined that wife did not engage in that behavior, and the trial court accepted that finding of fact, the decree of reference limited the trial court to receiving evidence as to the effect of wife’s behavior upon the marriage— not whether she engaged in that behavior in the first place.[4]
For example, if the commissioner had determined that wife forged husband’s name upon the credit card receipts, the trial court would have been authorized to receive evidence as to the *721 effect of wife’s forgery upon the marriage and the marital estate. But even under those circumstances, the trial court would have been precluded from allowing wife to present additional evidence to prove that, contrary to the commissioner’s finding, she did not commit the alleged forgery.[5]
Simply put, on the issue of whether wife committed forgery, the parties were limited to the evidence they had already presented to the commissioner. Unquestionably, the trial court had the authority to reexamine the evidence that was presented to the commissioner and to conclude, based upon an independent review of that evidence, that the commissioner’s factual findings were erroneous. See Orgain v. Butler, 255 Va. 129, 132, 496 S.E.2d 433, 435 (1998) (noting that, “[although the report of a commissioner in chancery does not *722 carry the weight of a jury verdict, the report should be sustained unless the chancellor concludes that the commissioner’s findings [of fact] are not supported by the evidence ... taken in the commissioner’s presence” (emphasis added) (citation omitted)); see also Code § 8.01-610. But neither Code § 8.01-610 nor this decree of reference reserve to the trial court any authority to hear additional evidence to use as a predicate for deciding whether a particular finding of fact was, in fact, erroneous.
Thus, I would hold that the decree of reference clearly delegated to the commissioner the responsibility to receive evidence and to make factual findings relating to wife’s “behavior.” And, once the commissioner found that wife did not engage in that behavior, the evidentiary record on that particular issue was closed and should not have been reopened unless husband met his burden of proving that the evidence satisfied the four-prong test set forth in Joynes v. Payne, 36 Va.App. 401, 551 S.E.2d 10 (2001).
B.
In Joynes, this Court held that a party’s attempt to introduce “additional evidence into the record after the commissioner has filed his report is treated as a motion to receive after-discovered evidence.” Id. at 418, 551 S.E.2d at 18. Thus, in order to reopen the record, four requirements must be met:
(1) the evidence must have been discovered after the record was closed; (2) it could not have been obtained prior to the closing of the record through the exercise of reasonable diligence; (3) it is not merely cumulative, corroborative, or collateral, and (4) it is material, and, as such, should produce an opposite result from that contained in the commissioner’s report.

Id.

Here, husband did not present any evidence indicating that the expert witness testimony “was discovered after the record *723 was closed,” nor did he contend that the evidence “could not have been obtained prior to the closing of the record through the exercise of reasonable diligence.” Because husband did not carry his burden of proving that the evidence met the four-prong test required for admitting after-discovered evidence, I would hold that the trial court erred when it reopened the record on the issue of wife’s alleged forgery.
C.
For these reasons, I believe that the trial court abused its discretion because it erred, as a matter of law, in reopening the record to hear additional evidence on the issue of whether wife engaged in the alleged behavior. See Congdon v. Congdon, 40 Va.App. 255, 262, 578 S.E.2d 833, 836 (2003) (noting that the trial court abuses its discretion if it uses “an improper legal standard in exercising its discretionary function” (internal quotations omitted)); see also Gray, 268 Va. at 86, 597 S.E.2d at 96. Because I would reverse the judgment of the trial court, I respectfully dissent.

. The majority states that the commissioner merely found that husband failed to carry his burden of proof, concluding that this statement is not equivalent to a factual finding that wife did not commit forgery. However, as wife argues, courts typically state factual findings in terms of a party’s failure to meet his burden of proving that particular fact. See, e.g., Woo v. Smart, 247 Va. 365, 371, 442 S.E.2d 690, 694 (1994) ("The trial court made the factual finding that the [party] ‘failed to *721 carry her burden of proo[f]____’ " (emphasis added)). Thus, implicit in a court’s statement that a party failed to carry his burden of proof is a finding that, for purposes of those proceedings, the "fact” (e.g., "forgery”) does not exist, and the status quo (e.g., "no forgery”) controls. See, e.g., Brothers Constr. Co. v. Va. Empl. Comm’n, 26 Va.App. 286, 294-95, 494 S.E.2d 478, 482 (1998) (noting that, if an employer "fails to meet its burden of pro[ving]” that an employment relationship does not exist, the court must presume that an employment relationship does exist); see also Charles E. Friend, The Law of Evidence in Virginia § 9-3(a)(2) (6th ed. 2003) ("The party who seeks to change the status quo ... is often said to have the burden of proof.”).