Present: Kinser, C.J., Lemons, Goodwyn, Millette, and Mims, JJ.

JEFFREY A. RUHLIN

                                                OPINION BY
v.      Record No. 101209              JUSTICE S. BERNARD GOODWYN
                                           November 4, 2011
MARIAM G. SAMAAN

            FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                      Timothy J. Hauler, Judge[1]

     In this appeal, we consider whether the circuit court

erred in permitting the use of a transcript of a recorded

statement to refresh a witness's recollection, and whether the

circuit court erred in ruling that a witness's testimony

concerning the plaintiff's prior consistent statements was not

admissible into evidence.

                              Background

     Jeffrey A. Ruhlin (Ruhlin) filed a complaint against

Mariam G. Samaan (Samaan) in the Circuit Court of Chesterfield

County, seeking damages for injuries he suffered in an

automobile accident with Samaan.  Samaan admitted that her

negligence was the proximate cause of the accident and the

parties proceeded to a jury trial on the issue of damages.  The

jury found in favor of Ruhlin and awarded him $5,000 in

damages.  Ruhlin appeals, arguing that the circuit court erred

in ruling on two evidentiary issues during the trial.

     On October 9, 2007, Ruhlin was involved in an automobile

accident with Samaan.  In addition to his other injuries, Ruhlin contends that he sustained a left shoulder injury as a result of the automobile accident.  A primary issue in assessing damages at trial was whether or to what extent Ruhlin suffered a shoulder injury as a result of the automobile accident.

Several years before the automobile accident, Ruhlin sustained an injury to his left shoulder and underwent surgery. The medical records regarding Ruhlin's treatment on the day of the accident do not reference an injury to or any complaints about his shoulder being injured in the accident.  Also, on the day of the accident, after Ruhlin received medical treatment, he spoke with a representative of Samaan's insurance company by telephone.  During this telephone conversation, which was recorded, Ruhlin reported injuries to his ribs and head, but did not mention any shoulder injuries.

Ruhlin presented evidence that his shoulder began to bother him shortly after the accident and that on October 25, 2007 and on November 2, 2007, he received medical treatment from Dr. Erika Young because of the shoulder injury.  The medical records for both visits note that Ruhlin complained of shoulder pain.  Ruhlin also received medical treatment from Dr.

---

[1] Judge William R. Shelton presided at the trial of this case.  However, Judge Hauler entered the final order.

Marion M. Herring, an orthopedic surgeon specializing in shoulders, on December 27, 2007 and January 17, 2008. Dr. Herring testified that when he saw Ruhlin in December 2007, Ruhlin reported that his shoulder had felt normal until after the automobile accident, but that during the January 2008 office visit, Ruhlin stated that he had experienced mild shoulder pain and an incomplete return to shoulder function before the accident.

During cross-examination, Samaan's counsel questioned Ruhlin about the inconsistencies in his claim that he injured his shoulder in the automobile accident and his statement to Dr. Herring in January 2008 that he experienced pain and lack of range of motion in his shoulder before the accident. Ruhlin claimed that he told Dr. Herring that the pain and functional limitations started after the accident.

Samaan's counsel also asked Ruhlin about the telephone conversation Ruhlin had with Samaan's insurance company on the day of the accident. The following cross-examination took place, in relevant part:

Q: And that phone call was all about what happened, who was at fault and did you get hurt. Right?

A: More — more of they asked the question of what happened and how it happened.

Q: And whether you were hurt, too. Right?

A: I don't recall.

Q: Let me see if I can refresh your recollection on that.

Samaan's counsel proposed handing a document to Ruhlin to refresh Ruhlin's recollection. Ruhlin's counsel objected because the document was a transcript of the recorded telephone conversation (the transcript). Ruhlin's counsel argued that the use of the transcript violated Code § 8.01-404. Samaan's counsel argued that the transcript was merely being used to refresh Ruhlin's recollection of the conversation, and that use of the transcript for that purpose did not violate Code § 8.01-404. The circuit court permitted Ruhlin to review the transcript to refresh his recollection. The identity of the document reviewed by Ruhlin was not disclosed to the jury.

Samaan's counsel continued his cross-examination of Ruhlin stating, "Having seen the document, does that refresh your recollection as to whether or not, on the phone call, you were asked about your injuries?" Ruhlin's counsel again objected, but the circuit court overruled his objection. Samaan's counsel resumed questioning Ruhlin about the telephone conversation, without reference to the document Ruhlin had reviewed, including the following:

Q: And during that phone call, all you said was my ribs hurt, but not so bad. And I hit my head. And that's it.

. . . .

4

Q: You didn't mention your shoulder at all, did you?

A: No, because I had no idea it was broke again.

Q: Because by that time, you didn't get any pain in your shoulder, did you?

A: I had pain in my shoulder from the time of the accident on.

Q: So why didn't you tell the person on the phone?

A: Because it wasn't significant over my chest pain.

Q: Are you saying that your chest pain was such that you didn't perceive the shoulder?

A: I didn't understand the shoulder was aching, yeah.

Counsel for Ruhlin later called Ruhlin's wife Johanna R. Ruhlin (Johanna) to testify. He sought to elicit testimony from her concerning statements that Ruhlin made about the pain and discomfort he experienced after the accident. Samaan objected, arguing that such statements constituted hearsay. Ruhlin argued that his prior consistent statements were admissible, under a hearsay exception, to rebut the defense's allegation of recent fabrication. The circuit court sustained Samaan's objection. Ruhlin appeals.

## Analysis

Ruhlin argues that the circuit court erred in allowing Samaan to cross-examine Ruhlin with the transcript of his telephone conversation with the insurance company. Ruhlin contends that the circuit court allowed Samaan to violate Code

§ 8.01-404, not only by permitting Samaan to cross-examine Ruhlin regarding the contents of the transcript, but also by allowing Samaan to use the transcript to contradict and impeach Ruhlin's testimony concerning the onset of his shoulder pain.

Samaan responds that Code § 8.01-404 did not prevent her from cross-examining Ruhlin regarding the telephone conversation that was recorded; she argues that Code § 8.01-404 only prevents the direct impeachment of a witness using the transcript of a prior recorded statement. Further, Samaan contends that she did not impeach Ruhlin with the transcript, but rather used it to refresh his recollection concerning the telephone conversation he had with the insurance company.

"This Court reviews evidentiary rulings under an abuse of discretion standard." Lawrence v. Commonwealth, 279 Va. 490, 496, 689 S.E.2d 748, 751 (2010). "However, a trial court has no discretion to admit clearly inadmissible evidence because admissibility of evidence depends not upon the discretion of the court but upon sound legal principles. The converse is likewise true because admissibility of evidence is always governed by legal principles." Gray v. Rhoads, 268 Va. 81, 86, 597 S.E.2d 93, 96 (2004) (internal citations and quotation marks omitted). "[A] trial court's interpretation of a statute is a question of law subject to de novo review." Id.

Code § 8.01-404 prohibits the use of certain types of

6

prior inconsistent writings to contradict a witness in a
personal injury action.  It provides as follows:

> A witness may be cross-examined as to previous
> statements made by him in writing or reduced into
> writing, relative to the subject matter of the civil
> action, without such writing being shown to him
> . . . . This section is subject to the qualification,
> that in an action to recover for a personal injury or
> death by wrongful act or neglect, no ex parte
> affidavit or statement in writing other than a
> deposition, after due notice, of a witness and no
> extrajudicial recording made at any time other than
> simultaneously with the wrongful act or negligence at
> issue of the voice of such witness, or reproduction
> or transcript thereof, as to the facts or
> circumstances attending the wrongful act or neglect
> complained of, shall be used to contradict him as a
> witness in the case.

Code § 8.01-404.  This Court has stated that the purpose of the
qualification noted in Code § 8.01-404

> was to correct an unfair practice which had developed,
> by which claim adjusters would hasten to the scene of
> an accident and obtain written statements . . . [that]
> were neither full nor correct and were signed by
> persons who had not fully recovered from shock and
> hence were not in full possession of their faculties.
> Later, such persons, when testifying as witnesses,
> would be confronted with their signed statements and
> . . . these statements would be introduced in evidence
> as impeachment of their testimony given on the witness
> stand.

Harris v. Harrington, 180 Va. 210, 220, 22 S.E.2d 13, 17
(1942).

Accordingly, Code § 8.01-404 prevents the impeachment of a
witness by use of an affidavit, statement or transcript made
after an accident but before trial.  See id.  Code § 8.01-404

7

does not, however, "prohibit the proof of prior inconsistent statements by oral testimony," even when such statements were reduced to writing and signed by the witness.  Id.  Otherwise, "an interested litigant, at any time between the occurrence of the accident and the trial, could reduce to writing a prior hostile statement of any witness and thus prevent this form of impeachment of such witness."  Id.

In the instant case, Ruhlin contends that the circuit court erred in allowing Samaan to cross-examine him about the content of his conversation with the insurance company.  We disagree.  Samaan could properly cross-examine Ruhlin concerning the content of the telephone conversation because, as we recognized in Harris, Code § 8.01-404 only prohibits the use of a written statement itself to directly impeach a witness.  Id.  The fact that the conversation with the insurance company was reduced to writing did not prevent Samaan from attempting to prove the inconsistencies in Ruhlin's claims by questioning him about the oral statements he made.

Ruhlin further argues that Samaan used the transcript itself to impeach and contradict his testimony.  The evidence in the record indicates that, on cross-examination, when Ruhlin stated that he did not recall whether the insurance company asked him about his injuries, Samaan used the transcript of the conversation to refresh Ruhlin's recollection.

8

In Gray, we stated that "[t]he plain terms of Code § 8.01-404 limit the application of the prohibition . . . to those situations where a prior written statement is used to 'contradict' a witness." 268 Va. at 89, 597 S.E.2d at 98. Accordingly, we held that Code § 8.01-404 did not preclude the introduction of a witness's prior written statement as a party admission in a plaintiff's case-in-chief because, at that point in the trial, the statements were not being used to "contradict" the witness. Id. at 89-90, 597 S.E.2d at 98-99.

The act of refreshing a witness's recollection does not involve contradicting that witness's testimony. Rather, "when a witness has a memory lapse on the stand and 'forgets some portion (or even all) of the facts of the matter about which [he or she is] called to testify,' a party may attempt to 'refresh' the witness's memory by having the witness examine materials relating to the matter for which they are testifying." McGann v. Commonwealth, 15 Va. App. 448, 451-52, 424 S.E.2d 706, 709 (1992) (quoting Charles E. Friend, The Law of Evidence in Virginia § 18 (3d ed. 1988)). After examining such materials, a witness may then "speak to the facts from his own recollection." Harrison v. Middleton, 52 Va. (11 Gratt.) 527, 544 (1854) (internal quotation marks omitted).

In the instant case, Samaan's use of the transcript of Ruhlin's telephone conversation was limited to refreshing

9

Ruhlin's recollection concerning the content of the conversation. Samaan did not introduce the transcript into evidence, quote it in open court, or even identify it to the jury. After Ruhlin reviewed the transcript, Samaan questioned Ruhlin about the telephone conversation without regard or reference to the document itself, and Ruhlin testified from his independent memory of his conversation with the insurance company. In addition, Ruhlin's responses to the questions about this conversation did not "contradict" his prior testimony. To the contrary, Ruhlin agreed that he did not mention his shoulder injury to the insurance company. Therefore, we hold that Samaan's use of the transcript of the prior recorded statement to refresh Ruhlin's recollection did not implicate the prohibitions in Code § 8.01-404 and the circuit court did not err by permitting such use.

Ruhlin also contends that the circuit court erred in excluding Johanna's testimony concerning prior consistent statements that Ruhlin made about his shoulder pain. Ruhlin argues that his prior consistent statements were admissible under a hearsay exception to rebut Samaan's allegation that Ruhlin fabricated his testimony at trial regarding when his shoulder pain started.

Samaan responds that the recent fabrication exception applies only if the prior consistent statements were made

before the individual had a motive to falsify.  She contends that the record in this case lacks evidence that Ruhlin's prior consistent statements comported with the requirements of this exception because he made the statements after the accident and after he made a claim with Samaan's insurance company.

Prior consistent statements of a witness – if offered for the truth of the facts recited – are inadmissible hearsay. Faison v. Hudson, 243 Va. 397, 404, 417 S.E.2d 305, 309 (1992). "To allow such a statement to corroborate and buttress a witness's testimony would be an unsafe practice, one which not only would be subject to all the objections that exist against the admission of hearsay in general but also would tend to foster fraud and the fabrication of testimony."  Id.  As this Court has stated, " 'the repetition of a story does not render it any more trustworthy.' "  Id. (quoting Scott v. Moon, 143 Va. 425, 434, 130 S.E. 241, 243 (1925)).

When offered for the more limited purpose of rehabilitating the credibility of a witness who has been impeached, a prior statement that is consistent with the trial testimony may sometimes be used, but the "doubtful value" of prior statements generally (see Charles E. Friend, The Law of Evidence in Virginia § 4-14 (6th ed. 2003)) has led to restriction of such proof to situations where (1) the witness has been subjected to specific forms of attack, and the offered

prior consistent statement was made before any litigation motive of the declarant to make self-serving statements would have arisen, or (2) where a witness has been impeached by a prior inconsistent statement.  See Anderson v. Commonwealth, 282 Va. ___, ___ S.E.2d ___ (2011) (this day decided).

No issue is raised in this case regarding any form of attack upon the witness other than a charge of "recent fabrication" of the trial testimony.  The forms of attack during impeachment of a witness that this Court has held will permit later rehabilitation of credibility by consistent statements the witness made before trial include those attacks which suggest that the trial testimony of the witness is a "recent fabrication" or that claim in words or substance that the witness had an interest or motive to testify falsely at the present trial.

> Where a witness has been assailed on the ground that his story is a recent fabrication, or that he has some motive for testifying falsely, proof that he gave a similar account of the transaction when the motive did not exist, before the effect of such an account could be foreseen or motives of interest would have induced a different statement, is admissible.

Id. at 404-05, 417 S.E.2d at 309 (quoting Honaker Lumber Co. v. Kiser, 134 Va. 50, 60, 113 S.E. 718, 721 (1922)); see also Friend, The Law of Evidence in Virginia § 4-14 ("If it is alleged that the testimony is a recent fabrication, . . .

12

evidence that the witness told the same story at an earlier time is admissible to refute the allegation of recent fabrication.") (emphasis in original).

However, in this case, there is nothing in the record to suggest that Samaan presented any argument that Ruhlin's trial testimony was a "recent fabrication." The record establishes that Samaan attempted to show at trial the inconsistencies in the statements Ruhlin made after the accident about when he first began to experience shoulder pain. Samaan did not allege that Ruhlin had crafted a new story at trial, but rather that Ruhlin had been inconsistent with his story all along. As we have previously stated, "to allow the admission of a prior consistent statement after impeachment of just 'any sort' would create an unreasonably 'loose rule.' " Faison, 243 Va. at 405, 417 S.E.2d at 310 (quoting Gallion v. Winfree, 129 Va. 122, 127, 105 S.E. 539, 540 (1921)); see also McLean v. Commonwealth, 32 Va. App. 200, 214, 527 S.E.2d 443, 450 (2000) ("The introduction of a prior consistent statement of a witness is not [permitted] merely because the testimony of a second witness calls the veracity of the first witness into doubt.").

Although Samaan may have called the veracity of Ruhlin into question by pointing out inconsistencies in his statements regarding shoulder pain, Samaan did not allege the shoulder injury claim was a "recent fabrication." Therefore, we hold

13

that the record supports the circuit court's exclusion of the proffered testimony.[2]

Accordingly, for the reasons stated, we will affirm the circuit court's judgment.

<u>Affirmed.</u>

---

[2] Given the holding of the Court concerning "recent fabrication," the Court need not examine the issue of whether the proffered testimony was inadmissible for rehabilitation purposes because the proffered statements were made at a time when Ruhlin had a motive to falsify.