# Richmond

## Jack Harris and Another v. Florence M. Harrington.

October 12, 1942.

Record No. 2605.

Present, Campbell, C. J., and Holt, Hudgins, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*John D. White* and *Wayt B. Timberlake, Jr.*, for the plaintiffs in error.

*J. Wesley Taylor* and *Forest T. Taylor*, for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

On the threshold of this case, we are confronted with a motion to dismiss the writ of error on the ground that the attorney, who signed the names of the principals to the appeal bond, lacked sealed authority so to do. Defendant in error cites and relies upon the opinion in the case of *Forrest* v. *Hawkins*, 169 Va. 470, 194 S. E. 721, to sustain the motion.

In the *Hawkins case*, the facts were that, when the writ was granted, plaintiff had only seven days before the expiration of the six months' period in which to execute the bond. On December 10, 1936, the bond was executed, and on December 20th, ten days thereafter, the attorney for defendant in error notified the attorney for plaintiff in error that, at the January, 1937, term of this court, he would make a motion to dismiss the writ on the same ground stated in the motion in this case. Within thirty days from the execution of the bond, the motion was made and continued until the case was reached on the docket, at which time the motion was sustained. The objection was raised without unreasonable delay and the motion was made as quickly as possible. In fact, the question of delay in raising the objection or the waiver of objection was not mentioned in the argument or in the opinion.

In the case under consideration, final judgment was entered for plaintiff on December 22, 1941. On motion of defendants, this judgment was suspended for one hundred days, provided defendants executed a bond before the clerk of the trial court with surety approved by him in the sum

of $5,500 conditioned according to law. On March 25, 1942, petition for the writ of error was filed in this court. On April 15th a writ of error was awarded, provided the petitioners or some one for them entered into a bond with sufficient security before the clerk of the circuit court in the penalty of $300 with condition as the law directs.

Code, sections 6337 and 6355, have been amended since the date of the opinion in the case of *Forrest* v. *Hawkins*, 169 Va. 470, 194 S. E. 721, *supra*. These sections now require petitions for writs of errors or appeals to be filed within four months from the date of the final judgment or decree of the trial court. "The appeal, writ of error or supersedeas shall be dismissed, whenever it appears that four months * * * and fifteen days * * * shall have elapsed before such bond is given as is required to be given before an appeal, writ of error, or supersedeas takes effect; * * * ." Code, sec. 6355, as amended Acts 1938, p. 135.

The appeal bond was executed on April 22, 1942. Defendants had until May 27th to execute the appeal bond; that is, the four months and fifteen days—with proper deductions for the time the petition was held for examination by this court—did not expire until forty-two days after the writ was granted. No objection was raised to the bond until June 29, 1942, when plaintiff filed a petition in this court alleging that a proper bond had been given as directed, but that the penalty stated in the order and the bond was insufficient to pay the amount of the $5,000 judgment and costs. The prayer of the petition was "that an adequate bond to cover the judgment, interest and costs, be required of the appellant before any further proceedings are had in this matter."

On the 31st day of July, 1942, defendants filed in this court an answer to the petition, concurred in the prayer and filed therewith a proper appeal bond in the penal sum of $6,000, conditioned as the law directs. Thereafter plaintiff filed two other petitions with the clerk of this court. In one petition it was stated that, since filing the petition on June 29th, plaintiff had ascertained that no supersedeas had

been awarded and therefore the bond for $300 was sufficient to cover the costs. Plaintiff then asked leave to withdraw the petition praying for an increase in the amount of the appeal bond. The other petition was a written motion filed on July 31, 1942, praying that the writ of error be dismissed on the ground that the attorney who executed the bond on behalf of the principals lacked sealed authority to execute such bond.

■ This court has repeatedly held that unreasonable delay in raising objection to an appeal bond will be considered as a waiver of any defects appearing therein.

The principles applicable to the facts are stated by Judge Riely in *Virginia Fire, etc., Ins. Co.* v. *New York Carousal Mfg. Co.*, 95 Va. 515, 28 S. E. 888, 40 L. R. A. 237, in the following clear and concise language: "If the defendant in error was not satisfied with the bond, or deemed the defect now pointed out a sufficient ground for the dismissal of the appeal, he should have taken the necessary steps, within the time that a new bond might have been given, or another appeal allowed (Code, sec. 3474), where he has had a reasonable time in which to do so, to require a proper bond to be given, and, in the event of a failure to give it, moved to dismiss the appeal. It is too late to wait, before making such motion, until a new bond cannot be given, or another appeal allowed. To dismiss the appeal at this late day, under these circumstances, would be grossly unjust. The defendant in error, after such delay, must be considered as having waived any objection to the defect in the bond. Following the course which has been heretofore pursued by this court in dealing with similar cases, the motion to dismiss must be overruled. *Jackson* v. *Henderson*, 3 Leigh 196; *Pugh* v. *Jones*, 6 Leigh 299; *Brown* v. *Matthews*, 1 Rand. 462; *Johnson* v. *Syme*, 3 Call 522; *Acker* v. *A. & F. R. Co.*, 84 Va. 648; and *Orr* v. *Pennington*, 93 Va. 268."

The above case (*Virginia Fire, etc., Ins. Co.* v. *New York Carousal Mfg. Co.*, 95 Va. 515, 28 S. E. 888, 40 L. R. A. 237) was decided in 1898 when the statute then in force

required petitions for appeals and writs of error to be filed within one year from the date of the final judgment.

Plaintiff in the trial court permitted thirty-five days, which remained to the defendants within which to perfect their appeal, to pass without raising any objection to the appeal bond. Thirty-three days after the expiration of the period of four months and fifteen days, plaintiff stated in a written petition to this court that the appeal bond executed by defendants was a proper bond except that the amount of the penalty was insufficient. The defendants, acting on this suggestion, executed a new bond in the penal sum of $6,000. On the same day, July 31, 1942, plaintiff raised the objection now relied upon.

Judge Prentis, speaking for the court in *Northern Neck Mut. Fire Ass'n* v. *Turlington*, 136 Va. 44, 116 S. E. 363, said: "The duty of a defendant in error or appellee, under such circumstances, is clearly indicated in the case of *Virginia Fire, etc., Ins. Co.* v. *New York Carousal Mfg. Co.*, 95 Va. 515, 28 S. E. 888, 40 L. R. A. 237—that is, that good faith requires that he should make the motion before the expiration of the time within which a new bond can be given, so that it can be amended or corrected, and that failure to do so will be deemed a waiver of such objection.

"It is claimed in this case that this rule cannot be applied because the bond here was not executed until October 20, 1921, and the year within which it could have been given expired on the next day, October 21st. This doubtless excuses the failure to make the motion within the year, but it does not relieve from the obligation to make it promptly just as soon as the error was discovered, so that it could be cured by the tender of a better bond before the case was called in this court."

In *Trust Co.* v. *Fletcher*, 152 Va. 868, 148 S. E. 785, 73 A. L. R. 1111, Judge West said: "The plaintiff contends that the writ of error should be dismissed for the failure of the defendant to execute the supersedeas bond in the penalty of $15,000.00 within the time prescribed by law.

"The writ of error was issued July 2, 1928, and legal service of the writ was accepted July 6, 1928, by defendant's counsel. The bond was given in August, 1928, and lodged with the clerk of the court about the middle of that month.

"The bond was 'executed by Geo. T. Tyson, clerk of the Circuit Court of Northampton county, acting under a power of attorney given to him by the American Surety Company, of New York, before himself, as clerk.' The seal of the company was affixed to the bond by H. H. Adams, deputy for Geo. T. Tyson, clerk.

"Not until the filing of his brief herein, which was served on counsel for the defendant on March 18, 1929, more than seven months after the bond was given, did the plaintiff interpose any objection to its sufficiency. The motion to dismiss the writ of error was not actually presented until the case was called for hearing in this court.

"Good faith required that the plaintiff make his objection to the bond promptly and take the necessary steps to require that a proper bond be given, or upon failure of defendant to execute such bond, to move that the writ of error be dismissed. At the time the original bond was executed, the defendant (plaintiff in error) had ample time within which a new bond could be required and given, or a new writ secured, and plaintiff's failure to take such steps will be construed as a waiver of any defect in the bond."

In *Brumley* v. *Grimstead*, 170 Va. 340, 196 S. E. 668, Mr. Justice Spratley said: "The defendant has filed a motion to dismiss the appeal on the grounds that this is not a controversy involving $300 in value, or otherwise appealable, and that the appeal bond was never given with any proper principal.

"It appears that the motion for dismissal was not made in good time. The appeal bond was given on October 19, 1937, about two months before the expiration of the six months period in which it could have been given. Objection thereto was not brought to the attention of counsel for the plaintiffs until March 2, 1938, and the motion was not filed in this court until March 7th, four days before the

case was reached for argument. We have held in several cases that a defect in an appeal bond is waived by failure to make a motion for dismissal before the expiration of the time within which a new bond can be given. *Trust Company of Norfolk* v. *Fletcher,* 152 Va. 868, 148 S. E. 785, 73 A. L. R. 1111; *Northern Neck, etc., Ass'n* v. *Turlington,* 136 Va. 44, 116 S. E. 363; *Virginia Fire, etc., Ins. Company* v. *N. Y. Carousal Mfg. Company,* 95 Va. 515, 28 S. E. 888, 40 A. L. R. 237."

■ The promptness and good faith of a defendant in error, in raising formal objection to an appeal bond, should be determined in the light of the fact that the time, within which a losing party in the trial court may apply for a writ of error or an appeal, has been reduced to four months. Since the losing litigant must act promptly within this period to obtain an appeal or writ of error, the successful litigant in the lower court must act with more dispatch than formerly in raising formal objection to an appeal bond.

■ Defendant in error not only waited three and one-half months before raising any objection to the form of the bond, but in the meantime induced the plaintiffs in error to give an additional bond in the penal sum of $6,000 with a bonding company as surety. Under these circumstances, we hold that defendant in error waived any objection to the bond.

The evidence discloses that on October 30, 1940, Miss Florence M. Harrington, the driver of a Plymouth car, with her mother and Miss Mae Riddick, was traveling north on highway No. 11. Several miles south of Staunton this car collided with a Buick sedan driven by Mrs. Jack Harris, who was traveling south with her husband, Elias Jerome and Miss Betty Jerome as passengers. The evidence as to the negligence of the respective drivers is in sharp conflict. The testimony of the witnesses, relied upon by the respective litigants, is sufficient to support a verdict for either litigant, depending entirely upon which theory the jury believed.

Under these circumstances, the defendants, Jack Harris and his wife, Bobbetta L. Harris, called Miss Betty Jerome, an occupant of their car, as an adverse witness. This witness testified that she was sitting on the front seat of the automobile on the right side of Mrs. Harris, the driver, and that, as the car approached the scene of the accident, she was asleep and did not see anything "until about the time the accident occurred." She stated that she did not know the speed of either car, nor did she know on which side of the highway the cars collided.

Miss Jerome was injured in the accident, and, on the same day, was taken to the King's Daughters' Hospital in Staunton, where she remained for several weeks. Captain Rudolph Bumgardner, Jr., as an attorney for Mr. and Mrs. Harris, interviewed her in the hospital on November 7th. During this interview she told Captain Bumgardner, in the presence of several witnesses, that the Harris car was traveling between thirty and forty miles an hour on the right hand side of the highway, and that the Harrington car was traveling very fast on the Harris' side of the highway. Captain Bumgardner reduced the substance of the conversation that he had with Miss Jerome to writing, which she signed.

Subsequent to this interview, a number of actions and cross-actions were instituted by the different occupants of the two automobiles. One or more of these actions and cross-actions were tried prior to the trial of the case now under consideration. In the meantime, Miss Betty Jerome had returned to her home in New York and Captain Bumgardner had joined the United States Army. It was agreed by counsel that the testimony of Miss Betty Jerome and the testimony of Captain Bumgardner, given in one of the other actions, could be introduced in evidence in this case, subject to the ruling of the trial court on the admissibility of the testimony of Captain Bumgardner. The trial court held that, under the provisions of Code, section 6216, the impeaching testimony of Captain Bumgardner was not admissible.

The question presented is whether the last sentence in section 6216, applicable to actions to recover for personal injuries or for wrongful death, prohibits impeachment of a witness by oral testimony of prior inconsistent statements when such statements are included in a writing signed by the witness.

The witness was asked whether she made certain definite statements to Captain Bumgardner during the interview. he had with her in the hospital. She admitted that Captain Bumgardner interviewed her, but denied that the account of the accident related to him by her was what she herself had seen and heard. The attorneys for plaintiff brought out the fact that her statements to Captain Bumgardner had been reduced to writing and then raised the objection to the introduction of the prior inconsistent statements.

It will be noted that the 1919 Code Revisors, in codifying section 6216, confined its provisions to the contradiction of a witness "by prior inconsistent writing." The first part of this section prescribes the manner in which a witness may be cross-examined as to previous statements made by him in writing relative to the subject matter under investigation. It expressly declares that the provision shall apply to both criminal and civil cases. The Code Revisors then conclude their codification of the section by adding a new sentence, which is as follows: "But this section is subject to this qualification, that in an action to recover for a personal injury or death by wrongful act or neglect, no ex parte affidavit or statement in writing other than a deposition, after due notice, of a witness as to the facts or circumstances attending the wrongful act or neglect complained of, shall be used to contradict him as a witness in the case."

The Code of 1887, section 3351, as amended by the Acts of 1899-1900, p. 124, declared when and how a witness could be contradicted by the introduction of prior inconsistent statements by oral testimony as well as by statements in writing. The 1919 Code Revisors omitted subsection 2 of section 3351 of the Code of 1887, dealing with proof of prior inconsistent statements by oral testimony, as they said

in a note to section 6214, "because it was considered the law independently of statute." This was held to be true in *Gordon* v. *Funkhouser*, 100 Va. 675, 42 S. E. 677. See Jones on ·Evidence, sec. 845.

■ ■ This brief history of section 6216, as well as the language used, clearly indicates that the provisions of the statute are confined to the contradiction of a witness by the introduction of a prior inconsistent statement in writing. The purpose of the addition to the statute was to correct an unfair practice which had developed, by which claim adjusters would hasten to the scene of an accident and obtain written statements from all eye-witnesses. Frequently, these statements were neither full nor correct and were signed by persons who had not fully recovered from shock and hence were not in full possession of their faculties. Later, such persons, when testifying as witnesses, would be confronted with their signed statements and, after admitting their signatures, these statements would be introduced in evidence as impeachment of their testimony given on the witness stand.

■ ■ The statute was intended to correct these abuses, and to this extent it is a modification of the rule as to best evidence, but it was never intended to prohibit the proof of prior inconsistent statements by oral testimony. If the statute were otherwise construed, then an interested litigant, at any time between the occurrence of the accident and the trial, could reduce to writing a prior hostile statement of any witness and thus prevent this form of impeachment of such witness. Clearly it was the intention of the 1919 Code Revisors to permit the jury to determine the truth of the matter under investigation from an oral examination of the witnesses on the stand, uninfluenced by an *ex parte* written statement prepared by an interested party for the purpose of introducing it in evidence.

Counsel for plaintiff relies upon the case of *Washington, etc., Ry. Co.* v. *Weakley*, 140 Va. 796, 125 S. E. 672, in which case Judge Christian, speaking for the Special Court, stated that when it became apparent "that it was the intention of counsel for the defendant to contradict the witness

by a prior inconsistent written statement," the trial judge was correct in refusing to admit any testimony in reference thereto.

In the case at bar, the counsel who attempted to impeach the adverse witness made no reference to a written statement but confined his questions to oral statements made by the witness, and signified his intention to contradict the witness by the oral testimony of Captain Bumgardner.

For the reasons stated, the verdict of the jury will be set aside, the judgment of the trial court reversed, and the case remanded.

*Reversed and remanded.*