# CIRCUIT COURT OF THE CITY OF NORFOLK

Jane Doe

v.

Virginia Wesleyan College

v.

Robert Roe

Case No. CL14-6942

By Judge David W. Lannetti

April 25, 2016

Plaintiff Jane Doe ("Doe"), Defendant/Third-Party Plaintiff Virginia Wesleyan College ("VWC"), and Third-Party Defendant Robert Roe ("Roe") appeared before the Court on January 13, 2016, for a hearing (the "Hearing") on various motions filed by the parties, proper notice having been given to all parties. At the conclusion of the Hearing, the Court took the following motions under advisement: (1) VWC's 45th Motion *in Limine* regarding the admissibility of certain expert opinions of Dr. Gehring; and (2) VWC's 48th Motion *in Limine* regarding the admissibility of certain expert opinions of Dr. Kennedy.

In preparation for trial, the Court has ruled on, *inter alia*, two Motions To Amend Complaint, a Motion Craving Oyer, two Demurrers, three Pleas in Bar, a Motion for Bill of Particulars, two Motions To Sever, two Motions for Partial Summary Judgment, seventy eight Motions *in Limine*, one Motion To Strike, the admissibility at trial of certain deposition testimony,

and the admissibility of more than fifty trial exhibits. These prior rulings provide the context for the Court's current ruling

Now the Court, after considering the arguments at the Hearing, reviewing the related pre-hearing and post-hearing briefs and the expert designations, and consulting applicable authorities, rules as follows.

*VWC's 45th Motion in Limine, Dr. Gehring's Testimony*

VWC seeks to exclude at trial certain expert opinions of Doe's expert witness, Dr. Gehring. The Court understands that, by agreement of the parties, Dr. Gehring will not offer at trial the following opinions, which are identified in his expert designation:

> (1) VWC misrepresented the safety of its campus in order to induce parents to enroll their children; (2) VWC was deliberately indifferent to the requirements of the law and failed to provide adequate staff training on Title IX and Clery Act requirements before Doe was sexually assaulted; (3) VWC failed to provide Doe with information required by Title IX after she was assaulted, which would have provided her with another option to pursue against the perpetrator of her rape; (4) VWC violated Title IX by failing to have a senior Title IX coordinator in charge of investigations, failing to notify Doe that she has a right to contact law enforcement, failing to properly investigate Doe's assault, and failing to make contemporaneous reports of sexual assaults and alcohol violations in the Daily Crime Log in order to provide timely warnings; and (5) VWC failed to follow its own process and denied Doe due process, as promised, which contributed to her change in behavior.

VWC's 45th Motion *in Limine* therefore is granted as to those opinions.

The remaining opinions of Dr. Gehring that VWC seeks to exclude, as identified in his expert designation, are as follows:

> (1) VWC failed to fulfill its promise of "providing a safe and secure campus" and preventing almost all crime; (2) VWC acted without due care in employing students who violated college policies to serve as role models for other students and enforce college regulations resulting in Doe's sexual assault; (3) but for Troy Katzer ("Katzer") serving alcohol to underage students at a party in his townhouse, Doe would not have suffered a sexual assault; (4) VWC's employment of students

in positions of semi·authority to act as role models for younger students, knowing that some of them had flaunted VWC's alcohol and other policies, contributed to Doe's sexual assault; (5) VWC failed to take reasonable measures, such as enforcing its own policies and other steps that were reasonably necessary for the safety of Doe in light of the foreseeable risk to Doe at VWC; (6) VWC's response to sexual assaults on its campus was deliberately indifferent with respect to the factors that fuel sexual assault and was inadequate and ineffective overall; (7) it was reasonably foreseeable to VWC's administration that relaxing alcohol policies would result in sexual assaults; (8) VWC's administrators were aware that it was reasonably foreseeable that girls were more likely to be sexually assaulted during the first six weeks of school but failed to take effective steps to prevent such assaults; (9) VWC failed to train guards in how to enforce its alcohol policies; and (10) it was VWC's deliberate indifference to its own alcohol policy by giving tacit approval for alcohol consumption in violation of its own rules that led to Doe's sexual assault.

To the extent not inconsistent with the Court's prior rulings, as discussed on the record and articulated in its Orders, and subject to the applicable rules of evidence, the Court reserves ruling on the admissibility of these opinions until trial.

*VWC's 48th Motion in Limine, Dr. Kennedy's Testimony*

VWC seeks to exclude testimony of certain expert opinions of Doe's expert witness, Dr. Kennedy. The Court understands that, by agreement of the parties, Dr. Kennedy will not offer at trial the following opinions, which are identified in his expert designation:

(1) the incidence of sexual assault on VWC's campus was at dangerous levels, far exceeding that of incidents in the surrounding cities of Norfolk and Virginia Beach; and (2) sexual assaults occurred on VWC's campus at an alarming rate, beyond that of any and all other Virginia schools.

VWC's 48th Motion *in Limine* therefore is granted as to those opinions.

The remaining opinions offered by Dr. Kennedy, which VWC seeks to exclude, are as follows:

(1) the prevalence of sexual assault on VWC's campus prior to Doe's assault, based on statistics provided by the school, makes it plain that VWC attracted the violent crime of sexual assault in the five-year period prior to Doe's attack; (2) alcohol

on VWC's campus fuels the prevalence of sexual assault; (3) colleges and universities, particularly those that fail to enforce laws concerning drinking, can tend to attract and provide a climate for disorder and violent crime; (4) foreseeable threats to student safety and security include alcohol abuse by all students and sexual assault against female students; (5) the problem of sexual violence is particularly acute during a student's first several weeks on campus; (6) Katzer's selection, supervision, and retention as a peer counselor was negligent given his frequent hosting of unauthorized parties in university housing where alcohol was served; (7) Katzer also demonstrated questionable judgment by destroying university property, illicitly using college computer time, engaging in plagiarism, consuming alcohol, and consuming artificial marijuana on campus; (8) it was not unforeseeable that Katzer would host an unauthorized campus party for freshmen girls who would have alcohol available to them and be vulnerable to drink spiking; (9) the problem of binge drinking and alcohol poisoning, even leading to death, should have been addressed by campus officials more vigorously; (10) the risk of sexual assault was well known by VWC based on its own Clery Act reports, and this criminal activity was foreseeable; (11) VWC had actual notice of the assaultive sex crimes on its premises; and (12) VWC purposefully did not obtain any relevant and applicable crime data and provide it to its own Director of Security in a timely fashion.

To the extent not inconsistent with the Court's prior rulings, as discussed on the record and articulated in its Orders, and subject to the applicable rules of evidence, the Court reserves ruling on the admissibility of these opinions until trial.

For the reasons stated herein, the Court grants in part and denies in part VWC's 45th Motion *in Limine* and VWC's 48th Motion *in Limine* regarding the admissibility of certain expert opinions of Dr. Gehring and Dr. Kennedy.

Any objections to this Order shall be submitted to the Court within fourteen days. Endorsements are waived pursuant to Rule 1:13. The Clerk shall mail (or email) copies of this Order to all counsel of record. It is so ordered.

May 13, 2016

Today, the Court rules on a Motion for Sanctions filed by Defendant Virginia Wesleyan College against Plaintiff Jane Doe, in which VWC asks the Court to sanction Doe for her "dishonesty" and "fraudulent behavior"

by initially claiming damages for loss of her virginity, stemming from an alleged rape (the "Incident"), and then withdrawing that claim after the close of discovery and shortly before the scheduled trial date. The Court finds that Doe's position in her pleadings and during her deposition, that she was a virgin at the time of the Incident, is inconsistent with her admissions during discovery and with her documented position going into trial. The Court further finds that, under the totality of the circumstances, Doe's assertion that she sincerely believed she was a virgin is not credible; rather, the Court finds, by clear and convincing evidence, that Doe consciously and intentionally misrepresented that she was a virgin. The Court, therefore, grants VWC's Motion for Sanctions and articulates the reasons for its ruling herein.

## Background

Doe had recently begun her freshman year as a student at VWC in August 2012. (Corrected First Am. Compl. 2.) Doe alleges that, on or about August 24, 2012, (*id.* ¶ 5), she was raped and sexually assaulted by Robert Roe, a fellow student, in a VWC dormitory (*id.* ¶¶ 27-28), and that VWC is liable for the resultant damages. (*See generally* id.) Doe alleges that she attended an on-campus party (the "Party") "sponsored" by a VWC-employed orientation peer advisor, where she admits that she consumed alcohol offered to her. (*Id.* ¶¶ 12-13.) The alcohol available at the Party allegedly "was spiked with an agent designed to incapacitate [Doe and others] and render them vulnerable to sexual assault." (*Id.* ¶ 18.) VWC-employed security officers allegedly visited the Party at some point, observed "alcohol available for teenager consumption," and took no action. (*Id.* ¶ 15.) Doe allegedly left the Party with some friends, who were impaired, to help them get to their dormitory rooms. (*Id.* ¶ 22.) Doe alleges that Roe followed her and her friends after they left the Party and, once Doe's friends were back in their dormitory rooms, Roe assaulted Doe and "forced her back to his dorm room," where Doe alleges Roe raped and sexually assaulted her. (*Id.* ¶¶ 23-27.) Doe prays for judgment against VWC based on three counts: negligence, gross negligence, and negligent hiring. (*See generally* id.) VWC filed a third-party complaint against Roe seeking indemnity and contribution.

Doe originally alleged a fraud count, which was based on allegations that VWC intentionally misrepresented its campus crime statistics to her prior to enrollment, thereby enticing her to enroll, that she withdrew after discovery demonstrated that it was not viable and VWC filed a motion for costs, fees, and other relief, which the Court ultimately denied. (*See* 1/20/2016 Order.)

Based on materials obtained pre-suit and during discovery, VWC understood that Doe claimed to have lost her virginity as a result of the alleged rape and that Doe was including loss of virginity as a component

of her claimed damages. (Mot. Sanctions 3.) VWC propounded upon Doe VWC's Third Set of Interrogatories, which requested, *inter alia*, identification of Doe's pre-Incident sexual partners. (VWC Third Mot. Compel Ex. A.) (The interrogatory actually asked Doe to "[i]dentify any individuals with whom you have had sexual intercourse at any time and . . . any individuals with whom you have had a romantic relationship . . . since August 24, 2012." (Mot. Sanctions Ex. F.).)

Doe objected. (*Id.* Ex. B.) In response to VWC's related motion to compel, the Court scheduled a hearing on August 10, 2015. After confirming at the hearing that Doe was alleging loss of virginity as a component of her claimed damages, the Court ruled that VWC was entitled to discovery regarding Doe's sexual history prior to the Incident. Of course, if Doe were in fact a virgin at the time of the alleged rape, any discovery regarding her prior sexual history necessarily would be very limited. Additionally, granting discovery on the issue was independent of any ruling of admissibility of evidence at trial.

In her subsequent attested interrogatory answer, Doe states the following: "Plaintiff, Jane Doe, was a virgin when she was sexually assaulted by Robert Roe. By definition, she had not had sexual intercourse with anyone before the attack." (Mot. Sanctions Ex. F.) Doe's answer to VWC's Third Set of Interrogatories includes a notarized attestation, in which Doe "affirm[s] that all the answers attached are honest and truthful" and the notary public certifies that Doe "made oath that the statements in the attached pleadings are true and correct to the best of his [sic] knowledge, information, and belief." (Mot. Sanctions Ex. F.)

During her deposition two months later, Doe confirmed that she was seeking damages related to her alleged loss of virginity:

> Q. Sexual history; as I understand it, you are claiming as part of your damages that you were a virgin and this assault took that away from you?
>
> A. Correct.

(*Id.* Ex. A, at 167:7-10.)

Discovery revealed at least two social media exchanges prior to the Incident between Doe and an apparent sexual partner in which Doe appeared to reference instances in which she engaged in sexual intercourse. In one exchange, Doe wrote: "I just told my mom and she f_____ hates me about us having sex." (*Id.* Ex. L.) In another exchange, Doe indicated: "we used a condom" and "we had sex at like 2 in the morning on sunday [sic] we are not lying about that" (*Id.* Ex. M.) There also were at least five social media exchanges prior to the Incident between Doe and third parties in which Doe claimed or implied that she had engaged in sexual intercourse. (*Id.* Exs. K, N, O, P, Q.)

Depositions of several of Doe's medical providers revealed that Doe had reported engaging in sexual activity or sexual intercourse prior to the Incident. Dr. James F. Cahill, M.D., who treated Doe after the Incident, testified at his deposition as follows:

> Q. When did [Doe] first become sexually active?
> A. She reported that she had first become sexually active at the age of 16.[1]

(Mot. Sanctions Ex. J.) Dr. Michael Denicole, D.O., who also treated Doe after the Incident, testified as follows during his deposition:

> Q. Did [Doe] report to you when she first had sexual intercourse?
> A. Yes, she did.
> Q. What did she tell you?
> A. At the age of 16.

(*Id.* Ex. B.) During her deposition, Dr. Laura Carite, M.A., L.P.C., who was Doe's counselor, testified as follows:

> Q. Did [Doe] report engaging in sexual intercourse involving penetration prior to August 2012?. . . .
> A. Yes.

(*Id.* Ex. R.)

Discovery also uncovered a medical report that indicated that Doe's hymen was "not intact" prior to the Incident. (Resp. Mot. Sanctions Ex. B (dated August 8, 2011).) Although a ruptured hymen certainly is not conclusive evidence of having engaged in sexual intercourse, Doe in fact provided the medical report to the Court and made this correlation when she admitted that she was not actually a virgin at the time of the Incident, as discussed *infra*.

In her Thirteenth Supplemental Responses to VWC's First Set of Interrogatories and Requests for Production of Documents, served on VWC approximately four months after the Court granted discovery regarding Doe's pre-Incident sexual history and approximately one month prior to the scheduled start of trial, Doe notified VWC, apparently for the first time, that "Ms. Doe will not be claiming the loss of virginity at trial." (Mot. Sanctions Ex. C.) On the day before the scheduled start of trial, the trial was postponed due to inclement weather that prevented some counsel and witnesses from traveling to the City of Norfolk Courthouse. Subsequently, in Doe's Objections to VWC's Witness and Exhibit List, filed with the Court days before the scheduled start of trial, Doe indicated, "Plaintiff will

---

[1] Doe was eighteen years old at the time of the Incident.

concede she was not a virgin at the time of the assault." (*Id.* Ex. S.) VWC filed its Motion for Sanctions shortly thereafter, and a hearing was held on April 11, 2016.

*Positions of the Parties*

### A. *VWC's Motion for Sanctions*

VWC argues that, by Doe initially claiming damages related to loss of virginity and subsequently conceding that she was not a virgin, Doe "has given sworn testimony and responded to discovery under oath with false answers apparently intended to defraud VWC out of thousands, if not millions, of dollars." (Mot. Sanctions 9.) VWC further asserts that these false statements "resulted in significant unwarranted bad publicity to VWC" and that "VWC has been required to expend large sums of goodwill, attorney's fees, expert witness fees, and other litigation costs." (*Id.*) VWC requests sanctions be imposed on Doe in the form of: (1) dismissal of the suit with prejudice; (2) awarding VWC its attorney's fees, costs, and expenses, with interest; (3) striking Doe's claim for damages; (4) advising the jury that Doe has made a false claim; and/or (5) otherwise as the Court deems just and appropriate.

Pursuant to its motion and as confirmed during the related hearing, VWC seeks sanctions only against Doe individually and makes no accusations of improper conduct against Doe's counsel. (Mot. Sanctions 1.)

### B. *Doe's Response to VWC's Motion for Sanctions*

Doe responds that she "has not engaged in any discovery misconduct and has been nothing but honest throughout the course of litigation." (Resp. Mot. Sanctions 1.) Further, she "stands by the truth of everything she has stated in her discovery responses and deposition testimony." (*Id.* at 2.)

Specifically, with respect to the social media exchanges between Doe and an apparent sexual partner prior to the Incident, Doe testified during her deposition that these were references to unsuccessfully trying to have sexual intercourse and to engaging in oral sex, and that the referenced condom was a cover story for her mother related to the attempted sex. (*Id.* Ex. A, at 302:21-303:2, 305:2-22.) During her deposition, Doe also discussed another individual she identified as a second "sexual partner" with whom she attempted unsuccessfully to have sexual intercourse; she indicated that neither of the two sexual partners could penetrate her vagina due to the pain she experienced when each attempted to do so, allegedly as a result of a medical condition she has. (Resp. Mot. Sanctions Ex. A, at 285:14-286:3.) Doe further testified that other social media exchanges between her and third parties, in which she claimed or implied that she had engaged in sexual intercourse prior to the Incident, constituted "embellishments by a

teenage girl attempting to fit in with her friends" regarding events actually short of sexual intercourse. (*Id.* at 9; id. Ex. A, at 300:6-301:1, 301:18-302:1, 309:22-310:17, 311:5-24, 312:10-313:3.)

According to Doe, "[g]iven her [in]ability to actually engage in anything other than an initial penetration [with Partner 1,] which had to be abandoned due to pain, [she] still considered herself to be a virgin notwithstanding her admission that her [sic] and Partner 2 had tried to have sex." (*Id.* at 10.) Doe asserts that "she never had a sexual encounter prior to Roe raping her that could fairly be treated as sexual intercourse." (*Id.* at 13.) Acknowledging that her hymen was not intact prior to the Incident, Doe admits "it was possible that [she] had achieved sufficient penetration in her attempts to have sex with Partner 1 and/or Partner 2 to rupture [her] hymen (of course, other explanations could be advanced as well)." (*Id.*) In short, Doe asserts that she "nonetheless [had a] sincere belief that she was a virgin" and that she was abandoning her loss of virginity damages claim due to the anticipated difficulty at trial of "explaining why she considered herself a virgin despite admitted brief and momentary penetration that needed to be abandoned due to pain." (*Id.* at 10, 11.)

*Analysis*

A. *Legal Standard*

Section 8.01-271.1 of the Code of Virginia states, in pertinent part:

> [E]very pleading, written motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name. . . . A party who is not represented by an attorney . . . shall sign his pleading, motion, or other paper and state his address.
>
> The signature of an attorney or party constitutes a certificate by him that (i) he has read the pleading, motion, or other paper [and] (ii) to the best of his knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact. . . .
>
> If a pleading, motion, or other paper is signed or made in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper or making of the motion, including a reasonable attorney's fee.

Va. Code § 8.01-271.1 (2015 Repl. Vol.).

Rule 4:12 of the Rules of Supreme Court of Virginia states, in pertinent part:

> (a) *Motion for Order Compelling Discovery.* A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery as follows. . . .
> (3) *Evasive or Incomplete Answer.* For purposes of this subdivision an evasive or incomplete answer is to be treated as a failure to answer. . . .
> (b) *Failure to Comply With Order.* . . .
> (2) *Sanctions by Court in Which Action Is Pending.* If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just. . . .
> (d) *Failure of Party to . . . Serve Answers to Interrogatories.* If a party . . . fails . . . to serve answers or objections to interrogatories submitted . . . after proper service of the interrogatories, . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just. . . . In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Va. Sup. Ct. R. 4:12.

"Defendant[], as the moving part[y] in seeking sanctions, bear[s] the burden of proving by a preponderance of the evidence facts establishing misconduct warranting an award of sanctions." *Lester v. Allied Concrete Co.*, 83 Va. Cir. 308, 321 (Charlottesville 2011), *aff'd in part, rev'd in part on other grounds Allied Concrete Co. v. Lester*, 285 Va. 295 (2013).

It is axiomatic that the law does not presume fraud; to the contrary, the presumption is always in favor of innocent conduct. *Ein v. Commonwealth*, 246 Va. 396, 401, 436 S.E.2d 610, 613 (1993). The burden on the party alleging fraud on the court therefore is to prove such conduct by clear and convincing evidence. *Id.*

In determining whether a party has committed fraud on the court, "a controlling factor is 'whether the misconduct tampers with the judicial machinery and subverts the integrity of the court itself'." *Owens-Corning Fiberglas Corp. v. Watson*, 243 Va. 128, 142, 413 S.E.2d 630, 638 (1992) (quoting *United Bus. Commc'ns, Inc. v. Racal-Milgo, Inc.*, 591 F. Supp. 1172, 1186 (D. Kan. 1984)).

B. *Discussion*

The Court has considered the pleadings, oral argument at the April 11, 2016, hearing, and applicable authorities.

VWC asserts that Doe provided an untruthful interrogatory answer and false deposition testimony in violation of § 8.01-271.1 of the Code of Virginia (titled "Signing of pleadings, motions, and other papers; oral motions; sanctions") and Rule 4:12 of the Rules of Supreme Court of Virginia (titled "Failure to Make Discovery; Sanctions"). VWC also asserts that Doe's conduct violates Rule 3.3 of the Virginia Rules of Professional Conduct but, as VWC's motion is directed only against Doe individually and Doe is not a Virginia attorney, the Rules of Professional Conduct do not bind her conduct. The reference does, however, imply that Doe's conduct may constitute "a fraud upon a tribunal," which the Court addresses *infra*. Neither of these addresses sanctions for false deposition testimony, and neither applies to untruthful interrogatory answers under the circumstances present here. The court nevertheless has the inherent power to find that a party committed a fraud on the court and to impose appropriate sanctions.

1. *Sanctions Pursuant to § 8.01-271.1 of the Code of Virginia Are Not Available*

Section 8.01-271.1 of the Code of Virginia does not authorize the court to impose sanctions against Doe in this case. The statute states, in pertinent part:

> [E]very pleading, written motion, and other paper of *a party represented by an attorney* shall be *signed by at least one attorney of record* in his individual name. . . . A *party who is not represented by an attorney*, including a person confined in a state or local correctional facility proceeding *pro se, shall sign* his pleading, motion, or other paper and state his address.
>
> The signature of an attorney or party constitutes a certificate by him that (i) he has read the pleading, motion, or other paper [and] (ii) to the best of his knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact. . . .

Va. Code § 8.01-271.1 (emphasis added). Rule 4:1(g) of the Rules of Supreme Court of Virginia, which applies to pre-trial discovery, contains very similar language. It also arguably is the proper source to cite, as it deals specifically with pre-trial discovery as opposed to general pleadings and motions. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 183 (2012) ("If there is a conflict between a general provision and a specific provision, the specific provision prevails."). Nevertheless, the language in the two sources is almost identical for purposes of this motion.

As an initial matter, the language of the statute specifically indicates that sanctions are available only when an attorney or party signs a "pleading, motion, or other paper" in contravention of the listed requirements. Although the document at issue here, an interrogatory answer, is not a pleading or motion, it arguably falls within the ambit of "other paper."

More importantly, however, the statute, like Rule 4:1(g) of the Rules of Supreme Court of Virginia, which contains similar language specifically addressing pre-trial discovery, contemplates one of two situations: a case with "a party represented by an attorney" and a case with "a party who is not represented by an attorney." The express language provides that an *attorney* signature is required for the former situation and an *unrepresented party* signature is required for the latter situation. When a party is represented by an attorney, therefore, it is the *signature of the attorney* that is required and to which the statutory certification, as well as the potential imposition of related sanctions, applies. There is nothing in the language of the statute or in Rule 4:12 that equates an *attestation of a party* represented by an attorney with the required *attorney* certification; hence, the available sanctions associated with signing in violation of the statute when a party is represented by counsel can be assessed only against the attorney to whom the certification attaches.

Sanctions pursuant to Section 8.01-271.1 of the Code of Virginia therefore are not available against Doe under the circumstances present here.

### 2. Sanctions Pursuant to Rule 4:12 of the Rules of Supreme Court of Virginia Are Not Available

Sanctions against Doe pursuant to Rule 4:12 of the Rules of Supreme Court of Virginia likewise are unavailable. In order for Rule 4:12 sanctions to be available, the court normally must first enter an order compelling discovery. Rule 4:12(b)(2) states, in pertinent part, that, "[i]f a party . . . fails to obey *an order to provide or permit discovery* . . . the court in which the action is pending may make such orders in regard to the failure as are just." Va. R. Sup. Ct. 4:12(b)(2) (emphasis added).

The Rule does, however, include an exception. It provides that an evasive or incomplete interrogatory answer "is to be treated as a failure to answer," (Rule 4:12(b)(3)), and that, upon the failure to serve interrogatory answers, "[i]n lieu of any order or in addition thereto, the court shall require the party failing to act . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." (Rule 4:12(d).) Although an award of reasonable expenses, including attorney's fees, theoretically could be based on the failure to serve — or answer, under this theory — an interrogatory without issuance of a prior court order, the Court is not willing to go so far as to equate a failure to

*answer* an interrogatory with a failure to *serve* an interrogatory. The Court also does not find that a false answer to an interrogatory — such as exists here — constitutes an evasive or incomplete interrogatory answer. Doe's interrogatory answer is neither evasive nor incomplete; rather, it simply is false.

Sanctions pursuant to Rule 4:12 of the Rules of Supreme Court of Virginia, therefore, are not available against Doe under the circumstances present here.

3. *The Court Has the Inherent Power to Find That a Party Committed a Fraud on the Court*

Although Code § 8.01-271.1 and Rule 4:12 are not applicable here, the Court nevertheless has the inherent power to address fraud on the court and, if such fraud is present, impose appropriate sanctions. *See generally French v. Painter*, 86 Va. Cir. 344 (Martinsville 2013). Although this opinion does not hold precedential value, the Court finds the rationale offered by Judge Greer persuasive. In this regard, the Court agrees with the position taken by the U.S. Court of Appeals for the Fourth Circuit:

> Due to the very nature of the court as an institution, it must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates. This power is organic, without need of a statute or rule for its definition, and it is necessary to the exercise of all other powers. Because the inherent power is not regulated by Congress or the people and is particularly subject to abuse, it must be exercised with the greatest restraint and caution, and then only to the extent necessary.

*United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993); *see also SunTrust Mortg., Inc. v. AIG United Guar. Corp.*, 2011 U.S. Dist. Lexis 33118, at *41 (E.D. Va. 2011) ("By now it is well-settled that fraud on the court or abuse of the judicial process warrants use of the inherent power to impose sanctions on the offending party or its counsel, or both."). The Court does not consider the unpublished opinion to hold precedential value. The Court instead considers the rationale offered by the district court to the extent that the Court finds it persuasive. *See Fairfax Cty. Sch. Bd. v. Rose*, 29 Va. App. 32, 39, n. 3, 509 S.E.2d 525 (1999).

Although Virginia appellate courts have not defined "fraud on the court," the Court finds the definition used by the U.S. District Court for the Eastern District of Virginia instructive:

> A "fraud on the court" occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere

with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense.

*SunTrust Mortgage*, 2011 U.S. Dist. Lexis 33118, at *41-42.

Virginia courts have found that a party's untruthful answers to interrogatories and false deposition testimony can constitute a fraud on the court, thereby justifying the imposition of sanctions.

The Virginia Supreme Court has held that a false sworn interrogatory answer can constitute a fraud on the court. In *Owens-Corning Fiberglas Corp. v. Watson*, the Court found that Owens-Corning had committed a fraud on the court by falsely answering an interrogatory under oath in a federal case in Texas. 243 Va. 128, 413 S.E.2d 630 (1992). According to the Virginia Court: "Owens-Corning filed an answer to an interrogatory under oath. The answer contained a statement which Owens-Corning knew was patently false. *This false statement, under oath, constituted a fraud upon the Texas court.* . . ." *Id.* at 142, 413 S.E.2d at 638-39 (emphasis added).

Virginia circuit courts have awarded sanctions based on a party's giving false deposition testimony. *See, e.g., Ellerbe v. Lowe's Home Ctr., Inc.*, 47 Va. Cir. 464 (Richmond 1998) (finding that "[a] party's obligation to be truthful during discovery is absolute" and assessing a sanction of twenty-five percent of any verdict returned in plaintiff's favor); *Guertler v. Ukrop's Supermarkets, Inc.*, 61 Va. Cir. 59 (Richmond 2003) (imposing a sanction of twenty-five percent of any verdict returned for plaintiff); *Mayfield v. Southern Ry.*, 31 Va. Cir. 229 (Richmond 1993) (imposing a $10,000 sanction against plaintiff).

### 4. *Doe Committed a Fraud on the Court*

It is undisputed that Doe took the positions, both in written discovery and during her deposition, that she was a virgin at the time of the Incident and that she initially was claiming damages related to her loss of virginity. Doe also took these positions, via her counsel, during several hearings before this Court, including the hearings related to VWC's Motion To Compel discovery of Doe's sexual history and Doe's Eleventh Motion *in Limine* regarding Doe's prior sexual history. Her attested interrogatory answer states that she "was a virgin" and "had not had sexual intercourse with anyone" prior to the Incident. In her sworn deposition testimony, she answered affirmatively that she was "claiming as part of [her] damages that [she was] a virgin and [that the Incident] took that away from [her]." It, therefore, was reasonable for VWC to conduct discovery regarding Doe's pre-Incident sexual history, as the Court so ruled in response to VWC's related motion to compel in August 2015. VWC did in fact conduct such

discovery, uncovering documents that demonstrated that Doe's claim of virginity was false.

It also is undisputed that Doe factually was not a virgin at the time of the Incident. She admitted to her medical providers that she had engaged in "sexual intercourse" and "sexual intercourse with penetration" prior to August 24, 2012, and a virgin, by definition, is a person who has not had sexual intercourse. *Virgin*, Merriam-Webster.com (May 9, 2016). The Court finds it noteworthy that Doe fails to address these admissions in her original response to VWC's Motion for Sanctions. Further, in response to VWC's Motion for Sanctions, Doe admitted that "it was possible that [she] had achieved *sufficient penetration* in her attempts to have sex with [two separate partners] to rupture [her] hymen" (emphasis added), effectively admitting that she had engaged in sexual intercourse. "Sexual intercourse" has been defined as "penetration of the female organ by the male organ, however slight." *King v. Commonwealth*, 165 Va. 843, 846, 183 S.E. 187, 189 (1936). Most significantly, Doe ultimately *conceded* in a pre-trial filing that she was not a virgin at the time of the Incident.

Doe takes the position that, "[g]iven her [in]ability to actually engage in anything other than an initial penetration [with Partner 1] which had to be abandoned due to pain, [she] still considered herself to be a virgin notwithstanding her admission that her [sic] and Partner 2 had tried to have sex." Stated differently, Doe's position is that, because she had a sincere belief that she was a virgin, based on her flawed interpretation of the term and because, according to Doe, "she never had a sexual encounter prior to [the Incident] that could fairly be treated as sexual intercourse," she did not provide an untruthful interrogatory answer or false deposition testimony by asserting that she was a virgin.

Although a fraud on the court requires that the contemnor sentiently set in motion some fraudulent scheme or engage in other fraudulent conduct, and Doe apparently asserts that her "sincere belief" does not satisfy the "sentient" requirement, the Court finds that Doe's untruthful answer and false testimony were conscious and intentional. The Court simply cannot reconcile Doe's assertion of a sincere belief of virginity with the following: (1) social media exchanges that Doe had with an apparent sexual partner stating that "my mom hates me *about us having sex*," "*we used a condom*," and "*we had sex* at like 2 in the morning on sunday" (emphasis added);[1] (2) Doe's admission that the fact that her hymen was "not intact" might have been because she "had achieved sufficient penetration in her attempts to have sex"; (3) Doe's admission to a medical provider that she was "sexually active" prior to the Incident; (4) Doe's admission to another medical provider that she had "sexual intercourse" prior to the Incident;

---

[1] Although Doe's social media exchanges with third parties claim or imply that she had engaged in sexual intercourse prior to the Incident, the Court need not rely on these exchanges in light of Doe's admissions.

and (5) Doe's admission to a third medical provider that she had "sexual intercourse with penetration" prior to the Incident.

Doe filed a Motion for Leave To Supplement Response to VWC's Motion for Sanctions on May 10, 2016, *three months* after she submitted her original response and *two months* after the hearing on VWC's Motion for Sanctions. In her untimely motion, Doe asks the Court to, *inter alia*, consider an "Unsworn Declaration of Laura Carite," in which Dr. Carite "clarifies" her deposition testimony by declaring: "Ms. Doe reported her sexual experiences prior to the [Incident,] which included 'sex.' We never discussed the matter in terms of her specifically completing 'sexual intercourse involving penetration' with any individual, nor did she ever indicate that she considered any specific experience to be 'sexual intercourse'." Even if the Court were to consider this hearsay and the hearsay within hearsay and somehow discount Doe's admission, as expressed by Dr. Carite in her deposition, Doe *separately* admitted to Dr. Denicole that she had engaged in pre-Incident "sexual intercourse."

Ironically, to buttress her claim of veracity regarding her belief that she was a virgin at the time of the Incident, Doe asks the Court to accept her admissions that she was *not* truthful in seven different social media exchanges with others. (*See* Resp. Mot. Sanctions 2-8.)

Perhaps more importantly, Doe's assertion that she had a sincere belief that she was a virgin at the time of the Incident is contradicted by her own statements and admissions. Doe clearly understood the definition of "virgin" based on her attested interrogatory answer; she declared that she "was a virgin when she was sexually assaulted by Robert Roe" and "[b]y definition, she had not had sexual intercourse with anyone before the attack." By contrast, evidence indicates that she admitted to Dr. Denicole that she had engaged in "sexual intercourse" and to Dr. Carite that she had engaged in "sexual intercourse involving penetration" prior to the Incident. In other words, Doe took contemporaneous positions that she "*had not* had sexual intercourse with anyone" (via her attested interrogatory answer (emphasis added)) and that she *had* sexual intercourse (via admissions to at least two medical providers). The Court therefore finds, by clear and convincing evidence, that Doe consciously and intentionally misrepresented in her attested interrogatory answer and sworn deposition testimony that she was a virgin at the time of the Incident.

As the Supreme Court of Virginia stated long ago, "falsehood is a badge of fraud, and a case which is sought to be supported, by means of deception may *prima facie*, until the contrary be shown, be taken to be a bad and dishonest case." *Neece v. Neece*, 104 Va. 343, 348, 51 S.E. 739, 740 (1905). As one modern court aptly opined: "Honesty is not a luxury to be invoked at the convenience of a litigant. Instead, complete candor must be demanded in order to preserve the ability of this court to effectively administer justice." *Baker v. Myers Tractor Servs., Inc.*, 765 So. 2d 149,

150 (Fla. App. 2000). Simply stated, the ability to adjudicate a matter fairly and impartially relies on the honest pleading and presentation of evidence by the parties.

The Court finds, by clear and convincing evidence, that Doe was untruthful in her interrogatory response and testified falsely during her deposition, thereby committing a fraud on the Court.

### 5. *Sanctions against Doe Are Warranted*

Sanctions unquestionably are warranted. The question, then, is what sanctions are appropriate. VWC seeks, *inter alia,* dismissal of the case with prejudice. Although some Virginia courts in the past have dismissed cases based on a party committing fraud on the court, those cases involved conduct more contumacious than that present here. The Court similarly finds striking Doe's claim for damages[1] — as VWC alternatively requests — to be too harsh a remedy in light of the circumstances.

Although the false loss-of-virginity damages claim has been withdrawn from the case by Doe and will not be presented to the jury, Doe's credibility, or lack thereof, is central to the case at bar, especially because there are no third-party witnesses to the alleged rape. (The Court notes that the claim was not withdrawn until after discovery had been completed and very shortly before the scheduled trial date.) In light of Doe's untruthful attested interrogatory answer and false sworn deposition testimony, the Court finds that the jury is entitled to be informed about Doe's false claim and concomitant lack of veracity. At trial, absent a stipulation satisfactory to all parties, VWC is permitted to confirm with Doe that she initially claimed loss of virginity as a component of her damages and follow up by asking her whether she in fact was a virgin at the time of the Incident on August 24, 2012. If Doe responds negatively, *i.e.,* that she *was not* a virgin at the time, no further questioning on the issue of Doe's pre-Incident sexual history will be allowed. If, on the other hand, Doe responds positively, *i.e.,* that she *was* a virgin at the time, the Court will allow VWC to conduct limited cross-examination regarding Doe's pre-Incident sexual history.

Additionally, the Court finds that VWC is entitled to be compensated by Doe for the attorney's fees VWC expended during discovery of Doe's loss of virginity damages claim and that Doe otherwise should be sanctioned for her dishonesty. VWC stated during the hearing — and the Court does not find it surprising — that VWC's counsel did not maintain billing records segregated by individual claims such that VWC can identify the exact amount of attorney's fees — in terms of time spent on research, written

---

[1] The Court assumes VWC seeks to strike all of Doe's damages, as Doe already has withdrawn her claim for damages associated with her alleged loss of virginity.

discovery, depositions, pleadings, and hearings[1] — attributable to the loss-of-virginity issue. Nevertheless, counsel for VWC represented that the attorney's fee amount certainly is in the tens of thousands of dollars. In light of the circumstances, the Court orders that five percent of any judgment awarded to Doe be paid to VWC to both compensate VWC and sanction Doe for her dishonesty.

## Conclusion

For the above reasons, the Court grants VWC's Motion for Sanctions and orders sanctions as delineated above. The Court directs counsel for VWC to prepare and circulate an Order consistent with the ruling in this Opinion and submit it to the Court for entry prior to the start of trial.

## May 18, 2016

Plaintiff Jane Doe, Defendant/Third-Party Plaintiff Virginia Wesleyan College, and Third-Party Defendant Robert Roe appeared before the Court telephonically on May 13, 2016, for a hearing requesting clarification of the Court's prior ruling denying Doe's Eighteenth Motion *in Limine* seeking to exclude certain August 28, 2012, Facebook message postings between Doe and a third party, in which Doe appears to relay facts or circumstances about the August 24, 2012, incident that is the subject of this personal injury suit. *See* January 12, 2016, Order.

Specifically, although the parties agree that the Facebook messages *posted by Doe* (the "Facebook Messages") can be used for impeachment during cross-examination of Doe, VWC and Roe desire to use the Facebook Messages in their cases in chief and during their opening statements. After hearing from the parties during the telephonic hearing, the Court ruled that VWC and Roe were precluded from using the Facebook Messages in their cases in chief and during their opening statements. The Court, nevertheless, invited the parties to submit any additional precedential authorities or case law that addressed the issue, whereupon the Court would consider amending its ruling.

Having reviewed the cases cited by Roe, both in his "Memorandum in Opposition to Plaintiff's Objections to the Use of Plaintiff's August 28, 2012, Facebook Messages as Exhibit at Trial" and "Memorandum in Support of the Admissibility of Doe's August 28, 2012, Facebook Messages in Roe's and VWC's Cases-in-Chief and their Attendant Right to Reference the Facebook Messages in their Opening Statements," and consulted other legal authorities, the Court does not amend its ruling.

---

[1] This does not include compensation related to the related damage — and damage control — to VWC's reputation among its alumni and in the community, which VWC argues was required. The Court finds such damages too speculative to value and award based on the sparse evidence that has been presented to date.

VWC and Roe listed the Facebook Messages on their respective trial exhibit lists, and the Court assumes for purposes of this ruling that the Facebook Messages are relevant, can be properly authenticated, and in fact were authored by Doe.

Rule 2-613(b) of the Rules of Supreme Court of Virginia states, in pertinent part:

> (i) *General Rule.* [A] witness may be cross-examined as to previous statements made by the witness in writing or reduced to writing, relating to the subject matter of the action, without such writing being shown to the witness. . . .
>
> (ii) *Personal Injury or Wrongful Death Cases.* Notwithstanding the general principles stated in this subpart (b), in an action to recover for a personal injury or death or wrongful death, no *ex parte* affidavit or statement in writing other than a deposition, after due notice, of a witness . . . as to the facts or circumstances attending the wrongful act or neglect complained of, shall be used to contradict such witness in the case.

Although the Virginia Rules of Evidence did not become effective until 2012, they were "adopted to implement established principles under the common law and not to change any established case law rendered prior to the adoption of the Rules." Va. Sup. Ct. R. 2:102. In case law that preexisted the Rules, the Virginia Supreme Court explained the purpose of the current subpart dealing with personal injury and wrongful death cases (the "Exclusion Provision") as follows:

> The purpose of the addition to the statute was to correct an unfair practice which had developed, by which claim adjusters would hasten to the scene of an accident and obtain written statements from all eye-witnesses. Frequently, these statements were neither full nor correct and were signed by persons who had not fully recovered from shock and hence were not in full possession of their faculties. Later, such persons, when testifying as witnesses, would be confronted with their signed statements and, after admitting their signatures, these statements would be introduced in evidence as impeachment of their testimony given on the witness stand.

*Gray v. Rhoads,* 268 Va. 81, 87, 597 S.E.2d 93, 97 (2004) (quoting *Harris v. Harrington,* 180 Va. 210, 220, 22 S.E.2d 13, 17 (1942)) (interpreting Va. Code § 8.01-404).

The Court in *Harris* clarified the scope of the Exclusion Provision as follows:

> The statute was intended to correct these abuses, and to this extent it is a modification of the rule as to best evidence, but it was never intended to prohibit the proof of prior inconsistent statements by oral testimony. . . . Clearly it was the intention of the 1919 Code Revisors to permit the jury to determine the truth of the matter under investigation from an oral examination of the witness on the stand, uninfluenced by an *ex parte* written statement prepared by an interested party for the purpose of introducing it in evidence.

*Harrington*, 180 Va. at 220, 22 S.E.2d at 17.

The Facebook Messages undoubtedly are written statements. They also clearly relate to "the facts or circumstances attending the wrongful act or neglect complained of." The Rule does not include any temporal limits, *e.g.,* that the written statement be made at the time of the incident, and the Rule in fact includes an exception for deposition testimony, which normally occurs well after the incident. The Court, therefore, finds that the Facebook Messages come within the four corners of the Exclusion Provision.

Although several cases cited by Roe initially seem to support his position that the Facebook Messages are admissible during VWC's and his case in chief and during their opening statements, upon closer examination, the Court concludes otherwise.

*Gray v. Rhoads* initially appears to stand for the proposition that the Exclusion Provision does not apply to party admissions, as Roe asserts. 268 Va. 81, 597 S.E.2d 93. However, in *Rhoads* the party admissions were statements made by a party to police officers, who prepared written statements, at the scene of the accident. *Id.* at 85, 597 S.E.2d at 96. Although the court held that written statements were admissible as party admissions, the court's ruling was based on its analysis that the statements were not being used to "contradict" the witnesses *who recorded the statements, i.e.,* the police officers; as the court noted, the police officers had not yet testified, and might never testify. *Id.* at 89, 597 S.E.2d at 98. Here, Roe seeks to use Doe's *own written statements* to contradict Doe, which *would* be using the written statements to contradict the testifying witness. As pointed out in the strongly worded dissent, "The majority concedes, as it must, that the statements could not be used to contradict witnesses in the trial." *Id.* at 90, 597 S.E.2d at 99 (Stephenson, J., dissenting).

Scott v. Greater Richmond Transit Co. initially appears to stand for the proposition that a written statement that is neither signed by the witness nor in the witness's handwriting does not come within the Exclusion Provision. 241 Va. 300, 402 S.E.2d 214 (1991). There, the Court found that prior cases applying the Exclusion Provision, with one possible exception, which it specifically went on to overrule, involved written statements that were either signed by the witness or in his handwriting, as opposed to statements written down by a third party. *Id.* at 303-04, 402 S.E.2d at 217. In other

words, the signature or handwriting is an indicium that the witness had authored or adopted the written statement, bringing the writing within the Exclusion Provision, which exists "to permit the jury to determine the truth of the matter under investigation from an oral examination of the witness on the stand, uninfluenced by an *ex parte* written statement." Va. Sup. Ct. R. 2:613(b)(ii). Here, it is undisputed that Doe authored the Facebook Messages, making them the equivalent of a written statement signed by Doe or in her handwriting.

The proper application of the Exclusion Provision is demonstrated in *Ruhlin v. Samaan*, 282 Va. 371, 718 S.E.2d 447 (2011). There, Plaintiff provided a statement to Defendant's insurance company, which was reduced to writing. *Id.* at 374, 718 S.E.2d at 448. Defendant sought to impeach Plaintiff with the written statement when Plaintiff described additional injuries at trial. *Id.* at 375-76, 718 S.E.2d at 448-49. The Court held that the Exclusion Provision did not prohibit proof of prior inconsistent statements by oral testimony and cross-examination. *Id.* at 378-79, 718 S.E.2d at 450-51; *see also Harrington*, 180 Va. at 220, 22 S.E.2d at 17. ("[The Exclusion Provision] was never intended to prohibit the proof of prior inconsistent statements by oral testimony."). Additionally, the court held that the written statement could be used to refresh the witness's recollection because such use does not "contradict" the witness's testimony. *Ruhlin*, 282 Va. at 379-80, 718 S.E.2d at 451.

Similarly, here, the Court finds that VWC and/or Roe may use the Facebook Messages as proof of prior inconsistent statements via oral testimony and cross-examination, and to refresh Doe's memory if necessary. VWC and Roe may not introduce the Facebook Messages into evidence, use them in their cases in chief, or mention them during their opening statements.

Any objections to this Order shall be submitted to the Court within fourteen days. Endorsements are waived pursuant to Rule 1:13. The Clerk shall mail (or email) copies this Order to all counsel of record. It is so ordered.